UNITED STATES FIDELITY & GUARANTY CO. (BALTIMORE, MD.) v. REINHART & DONOVAN CO.

No. 3710.

United States Court of Appeals
Tenth Circuit.

Nov. 22, 1948.

Rehearing Denied Jan. 12, 1949.

Lynn J. Bullis, Jr., of Oklahoma City, Okl. (R. M. Rainey and R. M. Rainey, Jr., both of Oklahoma City, Okl., on the brief), for appellant.

James S. Twyford, of Oklahoma. City, Okl. (Solon· W. Smith and William J. Crowe, both of Oklahoma City, Okl., on the brief), for appellee.

Before BRATTON, HUXMAN and MURRAH, Circuit Judges

HUXMAN, Circuit Judge.

This was an action by the Reinhart and Donovan Company[1] against the United States Fidelity and Guaranty Company[2] to recover attorneys' fees and expenses totaling $6,252.56, incurred by the contractor in successfully defending a suit for damages in the District Court of Osage County, Oklahoma. Trial was to the court. Judgment was entered for the contractor for the above amount and the insurer has appealed.

The suit arose out of the following facts: The contractor entered into a contract with the Verdigris Electric Cooperative' Company, Inc.,[3] for the construction of a rural electrification line for it. The policy of insurance written by the insurer was issued to cover the operations of the contractor under its contract with Verdigris. It covered the period from December 31, 1940, to December 31, 1941. The insuring clause of the policy provided, as follows:

"To Pay all claims for damages, including claims in consequence of expense or loss of service, for which the Insured or a partner, officer, or director of the Insured is legally liable because of bodily injury or death of any person resulting from an accident during the policy period and arising out of the performance of work during the policy period in the course of Insured's contracting business, within any place named in Item 7 of the Declarations; *' * *".

In the policy, the insurer further agreed "To Defend all suits seeking to enforce such claims, even though groundless, and in connection therewith To Pay without limit all legal expenses; * * *". It also contained an exclusion clause, which, so far as material, provided:

"This policy does not apply to any claim: 1. Arising out of an accident caused by any defect in material or workmanship after completion of the Insured's work at the place where the accident occurs; * * *".

The contractor finished· working on the line in September. 1941, paid its last pay-

---

[1] Herein called the contractor.
[2] Herein called the insurer.
[3] Herein called Verdigris.

roll on the project at that time, moved its employees and equipment elsewhere, and turned the project over to Verdigris. On October 1, 1941, Verdigris accepted the project and at that time assumed control over it and began energizing the line. On October 20, 1941, within the policy period, W. E. Howard, a Verdigris employee, was engaged in setting meters and performing other services for Verdigris necessary to supply current to the customers of that company. He had made an installation and in testing it, he found that no current came to the meter. He checked back along the line and ascertained that a jumper wire had not been installed on an "A-6" pole. At this pole the wire carrying the current stopped at a dead end on each side and the jumper wire was necessary in order for the current to be carried across. Such a jumper wire was required installation on this type of pole under the terms of the contract between the contractor and Verdigris. When Howard discovered this missing jumper wire, he directed a fellow employee, Dutton, to take some tools and a hot stick and move down the line to determine if the line was hot. Howard told Dutton that he would not do anything until Dutton signaled him whether or not the line was hot. Notwithstanding, as soon as Dutton started down the line, Howard climbed the pole in question and with a piece of wire was apparently engaged in measuring the distance between the two ends of the line when the current made an arc from the line to the wire he was holding, resulting in serious injury to him. Thereafter, Howard instituted an action for damages against the contractor in the District Court of Osage County, Oklahoma. The contractor notified the insurer and demanded that the latter defend the action under the terms of the policy. This the insurer refused to do on the ground that the policy did not cover the loss claimed in the action. The contractor defended at its own expense and was successful in the litigation.[4] The contractor incurred expenses in the amount set out above in the defense of this suit, made a demand on the insurer for the payment of the amount involved, and payment being refused, instituted this action.

At the conclusion of the evidence, the trial court made findings of fact and conclusions of law. From the above facts, the court found that Howard's cause of action in the State Court did not fall within the exclusion clause of the policy noted above, but that the cause of action was based upon the incompleteness of the work at the place where the accident occurred and that it was the duty of the insurer to defend the Howard suit under the terms of the policy. The trial court concluded as a matter of law that the policy of insurance covered the Howard accident; that the accident complained of and the injuries occurred within the coverage period of the policy; that the Howard action did not fall within any of the exceptions of the policy; and that it was the legal duty of the insurer to defend that action. Accordingly, the judgment complained of was entered.

The insurer urges three grounds for reversal of the judgment. They are:

1. That the accident and claim of Howard are not covered by the policy for the reason that the accident was caused by a defect either in material or workmanship after completion of the contractor's work at the place where the accident occurred;

2. That the accident out of which Howard's claim arose was not covered by the policy because it did not arise out of the performance of work in the course of the contractor's business; and

3. That the insurer was under no obligation to defend a groundless suit against the contractor when the insurer would not be liable under its policy contract for any recovery had therein.

Much emphasis is placed on the question whether failure to install the jumper wire constituted a defect in material or workmanship or a failure to complete the work. A number of cases are cited by the parties to sustain their respective contentions with regard to this question. Among these are Camden & Atlantic Telephone Co. v. United States Casualty Company, 227 Pa. 242, 75

[4] Howard v. Reinhart & Donovan Co., 196 Okl. 506, 166 P.2d 101.

A. 1077; Keystone Lumber Co. v. Security Mutual Casualty Co., 103 Pa.Super. 154, 158 A. 314; Daniel v. New Amsterdam Casualty Co., 221 N.C. 75, 18 S.E.2d 819; Hutchinson Gas Co. v. Phœnix Indemnity Co., 206 Minn. 257, 288 N.W. 847; Smith v. United States Fidelity & Guaranty Co., 142 Neb. 321, 6 N.W.2d 81. While these cases are illuminating, they are not decisive of the precise question because in each case the language of the policy differed somewhat from that in the policy under consideration here. For that reason and for the further reason that in our view the decision does not turn upon whether the failure to install the jumper wire constituted a failure to complete the work or constituted a defect in workmanship, no detailed analysis of these cases will be undertaken.

■■ For the purpose of this opinion, it may be conceded that Howard's cause of action did not fall within the exclusion clause. Conceding this, it was none the less necessary to bring the loss within the coverage of the policy before the insurer would be liable. The insuring clause covered "bodily injury or death of any person resulting from an accident during the policy period and arising out of the performance of work during the policy period in the course of the Insured's contracting business, within any place named in Item 7 of the Declarations * * *". In construing this clause we must give effect to the words "in the course of the insured's contracting business," as well as to the words "arising out of the performance of work." They are not synonymous but have distinct meanings. "Arising out of" has generally been defined as referring to the origin or cause of the action, while "in the course of" has been construed as referring to time, place or circumstances.[5] While these interpretations are generally found in cases construing similar language in workmen's compensation statutes, they have like application to the same terms found in liability insurance contracts such as the one in this case.

■ So then, in order for Howard's loss to come within the coverage of the policy, it was necessary to establish not only that it arose out of the performance of work but also that it occurred in the course of the contractor's contracting business. Even assuming that the accident may be said to have arisen out of the performance of work by the contractor in that it would not have occurred had the contractor fully performed its contractual obligation by installing the jumper wire, it is clear that it did not arise in the course of its contracting business. It had completed its work, paid its last payroll, removed its workers and equipment, and turned the job over to Verdigris, which, in turn, had accepted it and had assumed control of it. As far as either it or Verdigris knew, the contractor was completely through with the work and would never be required to return. The undisputed facts are that thereafter the contractor did no further work and did not return to the job.

If we assume that the failure to install this one jumper wire constituted a failure to complete the work, Verdigris could, under its contract, have required the contractor to return and complete the work. Had this been done, the contractor would again have been engaged in performing work under its contract in the course of its contracting business and had this accident then occurred, it would have been liable under the policy for the resulting loss.

Howard, however, was not an employee or agent of the contractor. He was not asked by the contractor or Verdigris to complete any work which was required of the contractor. He was a mere volunteer in doing what he did, and his voluntary act did not constitute performance of work in the course of the contractor's contracting business under the obligations of its contract within the meaning of the coverage clause of the policy. Under the undisputed facts of the case, the court's conclusion that the accident occurred in the course of the insured's contracting business was not warranted.

[5] See Ryan v. State Industrial Commission, 128 Okl. 25, 261 P. 181; Indian Territory Illuminating Oil Co. v. Lewis, 165 Okl. 26, 24 P.2d 647; Grandclair v. Rogers Bread Co., 193 Okl. 489, 145 P.2d 758, and cases cited therein.

■ From what has been said, it follows that the insurer was under no obligation to defend the action by Howard merely because in its contract it had agreed to defend "all suits seeking to enforce such claims, even though groundless, and in connection therewith to pay without limit all legal expenses." An insurer is not obligated to defend a groundless suit when it would not be liable under its policy contract for any recovery had therein.[6]

Reversed.

---

[6] Kelly-Dempsey & Co. v. Century Indemnity Co., 10 Cir., 77 F.2d 85; Smith v. United States Fidelity & Guaranty Co., 142 Neb. 321, 6 N.W.2d 81; United States Fidelity & Guaranty Co. v. Baldwin Motor Company, Tex.Com.App., 34 S.W. 2d 815; H. H. Treadwell, Inc. v. United States Fidelity & Guaranty Co., 275 N.Y. 158, 9 N.E.2d 818.