**L. L. CONNER et al., Appellees,**

**v.**

**TRANSAMERICA INSURANCE COM-
PANY, Appellant.**

**No. 44111.**

Supreme Court of Oklahoma.

April 25, 1972.

Conner, Little & Conner, Merson, Camp-
bell & Merson, Oklahoma City, for appel-
lees.

Fenton, Fenton, Smith, Reneau & Moon,
Oklahoma City, for appellant.

DAVISON, Vice Chief Justice.

This is an appeal from a judgment of the District Court of Oklahoma County in the sum of $2500 with interest in favor of L. L. Conner against Transamerican Insurance Company (Transamerica) and from a judgment against the same company in the sum of $2693.75 with interest in favor of Herman Merson and Wayne N. Campbell doing business under the firm name of Merson and Campbell. As indicated by the pleadings and the stipulation of facts, Transamerica, successor to the Pacific National Insurance Company (Pacific), denied obligation to defend Conner, a lawyer, under a professional liability policy issued by Pacific to Conner and denied obligation to defend Merson and Campbell, lawyer, under a professional liability policy issued by Pacific to Merson and Campbell. Without objection Conner and Merson and Campbell, each stating a separate cause of action, joined in one petition as plaintiffs against Transamerica as defendant to recover the expenses each plaintiff incurred and was required to pay due to defendant's denial of liability. Trial court designations will be hereinafter used.

The alleged necessity for defense arose when one Richard Wallach began a series of lawsuits against 35 defendants residing in Oklahoma, including plaintiffs. The occasion for the series of lawsuits, which were filed in the United States District Court for the Eastern District of Missouri, will be mentioned later. The defendant upon notification from each of plaintiffs took over the defense of each plaintiff but later without approval, consent and over the protest of each plaintiff, the defendant later notified their attorney to withdraw as counsel for each plaintiff as insurer for each. Counsel as notified withdrew. Each plaintiff, while continuing to notify defendant and make demand that defendant perform its obligations under each policy, was compelled to employ counsel who successfully represented each plaintiff to the end of the litigation. Each plaintiff was thus required to incur expenses which, allegedly, defendant under each applicable insurance policy was obligated to pay. The amount of the judgments is not questioned.

A non-waiver agreement had been entered into between each plaintiff and defendant which permitted defendant to enter upon a defense of each plaintiff without waiver of any rights or obligations of either of the parties under the insurance policy so that defendant could later withdraw if, as the result of developments by investigation and discovery it appeared that defendant had no obligation to defend or to assume liability under the policy.

As reflected by the stipulation, the facts relevant to a determination of defendant's liability under each of the involved professional insurance policies follows:

"In March, 1958, Richard Wallach of St. Louis, Missouri, purchased The Central Metal and Iron Company, an Oklahoma Corporation, engaged in the scrap business in Oklahoma City, Oklahoma; that subsequent thereto involuntary bankruptcy proceedings were instituted in the United States District Court for the Western District of Oklahoma. The petitioning creditors were represented by Bruce McClelland, and the plaintiffs herein, Merson & Campbell; that the bankrupt corporation was represented by Ungerman, Grabel, Ungerman and Leiter, of Tulsa, Oklahoma; that the plaintiff, L. L. Conner, was the local attorney for the Tulsa attorneys. Wallach was the President of the bankrupt corporation. The Bankruptcy proceedings were concluded and the creditors were paid their proportionate share of the assets of the·bankrupt.

"That on or about the 1st day of December, 1963, Richard Wallach commenced an action in the United States District Court at St. Louis, Missouri, in the Eastern District of Missouri, Eastern Division, Cause No. 63C–447(3) against approximately twenty-seven defendants, including Internal Revenue officials, judges, The Governor, bankers and other lawyers and the plaintiffs herein. That after service of process on the plaintiffs,

defendants were notified and undertook defense of the case under their policies with plaintiffs. That on or about February 26, 1964, the trial court sustained the separate motions filed by defendants attorneys representing the plaintiffs herein to dismiss the complaint. Wallach appealed to the United States Court of Appeals for the 8th Circuit, in Case No. 17636. On March 11, 1966, the Court of Appeals affirmed the judgment of dismissal of the appeal as reported in 356 Fed.2d 557.

"On December 21, 1964, before the 8th Circuit Court had entered its decision in the first case, Richard Wallach filed a second case in the United States District Court for the Eastern District of Missouri, Case No. 64C–458(1), against the same and other numerous defendants, including the Plaintiffs herein. On January 1, 1966, the trial court transferred the case as to all of the Oklahoma defendants including the plaintiffs, to the United States District Court for the Western District of Oklahoma and the case was docketed as Case No. 66–264. On May 1, 1967, Judge Luther Eubanks in a written opinion, dismissed the action as to all defendants. Wallach appealed this case to the United States Court of Appeals for the 10th Circuit, Case No. 9561. The plaintiffs herein filed motions to affirm the order of the trial court and on October 6, 1967, the Circuit Court granted the motions and dismissed the appeal. Wallach then filed a Petition for Writ of Certiorari in the Supreme Court of the United States, under 1080 Miscellaneous, October Term, 1967. On March 4, 1968, the Supreme Court denied the Petition for Writ of Certiorari.

"In All of the actions referred to and the various appeals Richard Wallach, a layman, acted without counsel.

\*    \*    \*    \*    \*    \*

"In the conduct of the bankruptcy proceedings and in all acts or omissions in connection therewith, all plaintiffs acted in good faith and in accordance with recognized proper and ethical standards of professional conduct as attorneys at law; that there were no dishonest, fraudulent, criminal or malicious acts or omissions of any of the plaintiffs; that the said bankruptcy proceedings were the only proceedings in which any of the plaintiffs had any dealings with Richard Wallach or any companies in which he may have been involved."

We have examined the petitions filed by Wallach in the United States District Court for the Eastern District of Missouri, attached as exhibits to the stipulation of facts, and from this examination have concluded that each petition charges, only against each of plaintiffs, fraudulent, deceitful and dishonest conduct such as false affidavits, forgery, deliberate misrepresentations and the like, all as a part of an alleged comprehensive conspiracy to deprive Wallach of his property, that was implemented in part by the filing of involuntary bankruptcy proceedings against The Central Metal and Iron Company, in the United States District Court for the Western District of Oklahoma. Wallach was president of The Central Metal and Iron Company, and according to his practice had apparently "bought into" the company after it had become insolvent.

The first of the petitions filed by Wallach against plaintiffs and others received the following interpretation by the Court of Appeals for the Eighth Circuit in Wallach v. Cannon, et al, 357 F.2d 557: "Appellant was seeking to recover damages from all of appellees for conspiracy and collusion to cause him pecuniary injury through fraud in commercial transaction and alleged legal malpractice in the representation of him in relation thereto." In deciding on the basis of this record, whether defendant had an obligation to continue to represent plaintiff in the litigation instituted by Wallach, we must determine as applied to the facts, the meaning of the

following provisions of each of the professional insurance policies:

## "PACIFIC NATIONAL LIFE INSURANCE COMPANY

"(A stock insurance company herein called 'the Company')

"Agrees with the insured, named in the Declarations made a part hereof, in consideration of the payment of the premium and in reliance upon the statements in the Declarations and subject to the limits of liability, exclusions, conditions and other terms of this policy:

## "INSURING AGREEMENTS

"I. Coverage A-Individual Coverage.

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of any act or omission of the insured, or of any person for whose acts or omissions the insured is legally responsible, and arising out of the performance of professional services for others in the insured's capacity as a lawyer * * *

"II. Defense, Settlement, Supplementary Payments.

"With respect to such insurance as is afforded by this policy, the company shall:

(a) defend *any suit* against the insured *alleging such act or omission* and seeking damages which are payable under the terms of this policy, *even if any of the allegations of the suit are groundless, false or fraudulent;* but the company may make such investigation and, with the written consent of the insured, such settlement of any claim or suit as it deems expedient (emphasis supplied)

(b) pay, in addition to the applicable limits of liability:

(1) all expenses incurred by the company, all costs taxed against the insured in any such suit and all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before the company has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the company's liability thereon.

(2) * * *

(3) * * *

## "EXCLUSIONS

"This policy does not apply:

"(a) to any dishonest, fraudulent, criminal or malicious act of omission of any insured, partner or employee."

In the case before us we have allegations, charging plaintiffs with misconduct, that are groundless, false and fraudulent as such words are used under contractual stipulations II(a) above which if adjudged to have been true would exclude the defendant's liability under Exclusion (a) above.

Agreeing with the interpretation of very similar expressions in a comprehensive personal liability endorsement to a policy by the Supreme Court of California, Gray v. Zurich Insurance Company, 65 Cal.2d 263, 54 Cal.Rptr. 104, 419 P.2d 168, and with the reasons assigned by that court for its interpretation, we hold that defendants were obligated to continue to defend plaintiffs in the Wallach litigation under the terms of the insurance policies here involved. In Gray, the court said:

"* * * A 'Comprehensive Personal Liability Endorsement' in the policy states, under a paragraph designated 'Coverage L,' that the insurer agrees '[T]o pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage, and the company shall defend any suit against the insured alleging such bodily injury or property damage and seeking damages which are payable under the terms of this endorsement, even if any of the allegations are groundless, false or fraudulent; but the company may make such investigation and settlement of any claim or suit as it deems expedient.' The policy

contains a provision that '[T]his endorsement does not apply' to a series of specified exclusions set forth under separate headings, including a paragraph (c) which reads, 'under coverages L and M, to bodily injury or property damages caused intentionally by or at the direction of the insured.'"

We repeat here the California court's statement of the case:

"The suit which Dr. Gray contends Zurich should have defended arose out of an altercation between him and a Mr. John R. Jones. Jones filed a complaint in Missouri alleging that Dr. Gray 'wilfully, maliciously, brutally and intentionally assaulted' him; he prayed for actual damages of $50,000 and punitive damages of $50,000. Dr. Gray notified defendant of the suit, stating that he had acted in self-defense, and requested that the company defend. Defendant refused on the ground that the complaint alleged an intentional tort which fell outside the coverage of the policy. Dr. Gray thereafter unsuccessfully defended on the theory of self-defense; he suffered a judgment of $6,000 actual damages although the jury refused to award punitive damages.

"Dr. Gray then filed the instant action charging defendant with breach of its duty to defend. Defendant answered, admitting the execution of the policy but denying any such obligation. The record on appeal has been augmented to include an offer of proof, presented by plaintiff and rejected by the trial court, which detailed the circumstances surrounding the altercation. The augmented record also includes exhibits introduced at the trial, consisting of copies of the pleadings and verdict in the Missouri suit and a copy of the subject insurance policy. The parties waived written findings of fact and conclusions of law; the court rendered judgment in favor of defendant. We must decide whether or not defendant bore the obligation to defend plaintiff in the Missouri action."

The California court proceeds to say re-

ferring to the language of the endorsement quoted above:

"* * * This language, in its broad sweep, would lead the insured reasonably to expect defense of any suit regardless of merit or cause. The relation of the exclusionary clause to this basic promise is anything but clear. The basic promise would support the insured's reasonable expectation that he had bought the rendition of legal services to defend against a suit for bodily injury which alleged he had caused it, negligently, nonintentionally, intentionally or in any other manner. The doctrines and cases we have set forth tell us that the exclusionary clause must be 'conspicuous, plain and clear.' (Stevens v. Fidelity & Casualty Co., supra, 58 Cal.2d 862, 878, 27 Cal. Rptr. 172, 377 P.2d 284). This clause is not 'conspicuous' since it appears only after a long and complicated page of fine print, and is itself in fine print; its relation to the remaining clauses of the policy and its effect is surely not 'plain and clear.'"

Gray has been followed by the courts of last resort in Michigan, Zurich Insurance Co. v. Rombough, 384 Mich. 228, 180 N.W.2d 775; in Kansas, Gowing v. Great Plains Mutual Insurance Company, 202 Kan. 78, 483 P.2d 1072; in Wyoming, Boston Insurance Company v. Maddux Well Service, 459 P.2d 777, and in Florida, Commerce Nat. Bk., Lake Worth v. Safeco Ins. Co. of Am., D.C. of Appeals, 252 So.2d 248.

We have considered Grieb v. Citizens Casualty Company, 33 Wis.2d 552, 148 N.W. 2d 103, and recognize that Grieb is contra to Gray. In our view, Gray is the better reasoned case and the views expressed therein more nearly comport with the rules we have established for the interpretation of contracts of insurance.

For example, we have held that an insurance policy's words of exclusion are to be narrowly viewed and its words of inclusion are to be broadly viewed. North-

western Mut. Ins. Co. of Seattle v. Richardson, Okl., 470 P.2d 330. Applied to the policy before us this does not mean that liability to defend is excluded when groundless, false or fraudulent allegations are made in a suit against the insured but liability of the insurer is excluded only for an act or omission of the insured that is adjudged to be dishonest, fraudulent, criminal or malicious. It is certainly not consonant with the objects to be accomplished by a professional insurance policy to say that by its terms no protection is afforded the insured when groundless charges of fraud and dishonesty are alleged in a suit against him. This must be so unless the exclusionary clause covers groundless, false and fraudulent charges by express reference. Of course the holding in Northwestern, supra, is but a particular application of the rule that contracts of insurance shall be construed in favor of the insured in resolving ambiguities. Aetna Insurance Company v. Zoblotsky, Okl., 481 P.2d 761.

Defendant calls our attention to United States Fidelity & Guaranty Co. v. Briscoe, 205 Okl. 618, 239 P.2d 754, wherein we held that "an insurer is not obligated to defend a groundless suit when it would not be liable under its policy contract for any recovery had therein." There the obligation to defend was limited, expressly, to any suit for damages caused by accident. The petition in this case alleged clearly the damages were not caused by an accident but the policy obligated the insurer to pay, on behalf of the insured, only for damages sustained and caused by accident. Although there was no exclusionary provision in the policy by clear implication the insurer had no obligation to defend if the damages were allegedly caused by some factor other than an accident, but insurer did have an obligation to defend if the cause factor was allegedly *accidental* "even if such suit is groundless, false or fraudulent."

But the holding in United States Fidelity and Guaranty Company cannot apply here because the exclusionary clause in the policy before us does not expressly preclude an obligation to defend suits in which it is *alleged* that the insured's conduct is dishonest, fraudulent, criminal or malicious but grants relief from liability only where the insured's conduct is in fact dishonest, fraudulent, criminal or malicious. It is this distinction, we believe, that prompted the California Supreme Court to hold as it did in Gray.

 Finally we briefly say that Birdwell v. Tri-State Insurance Company, Okl., 286 P.2d 736, does not hold, as contended for by defendant, that it is against public policy to agree to defend a person charged with dishonest, fraudulent, criminal or malicious act or omission.

Affirmed.

All Justices concur.