**UNITED STATES of America, Plaintiff-Appellant,**

v.

**UNITED STATES FIDELITY & GUARANTY COMPANY, Defendant-Appellee.**

No. 77–1582.

United States Court of Appeals, Tenth Circuit.

Argued Jan. 23, 1979.

Decided July 13, 1979.

Rehearing Denied Aug. 27, 1979.

Joseph Scott, Washington, D. C. (Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C., Hubert A. Marlow, U. S. Atty., Tulsa, Okl., Morton Hollander and Neil H. Koslowe, Washington, D. C., on the brief), for plaintiff-appellant.

Ronald L. Day, Oklahoma City, Okl. (Fenton, Fenton, Smith, Reneau & Moon, Oklahoma City, Okl., on the brief), for defendant-appellee.

Before SETH, Chief Judge, and McWILLIAMS and McKAY, Circuit Judges.

McWILLIAMS, Circuit Judge.

The United States, as assignee of Fenix & Scisson, Inc., brought suit against the United States Fidelity & Guaranty Company on a contract of insurance issued by the latter to Fenix & Scisson. Jurisdiction is based on 28 U.S.C. § 1355.

In March, 1963, Fenix & Scisson, hereinafter referred to as FS, entered into a contract with the Atomic Energy Commission to provide architectural and engineering services in connection with drilling and mining operations at various test sites, including the site on Amchitka Island, Alaska. The contract required, among other things, that FS assign its liability claims against third parties to the United States.

During the period between November 1, 1966, and November 1, 1969, FS was the owner of a comprehensive liability insurance policy issued to it by United States Fidelity & Guaranty Company, hereinafter referred to as USFG. The insuring provision of the policy obligated USFG, *inter alia,* to defend any suit against FS seeking damages on account of bodily injury or property damage. The policy contained an exclusion which provided that "the insurance does not apply to bodily injury or property damage arising out of any professional services performed by or for the named insured . . . ." The pertinent provisions in the policy of insurance issued FS by USFG are set forth in Appendix A.

On February 4, 1971, a suit was filed in the United States District Court for Alaska by one J. D. Williams against three defendants, one of which was FS, seeking damages because of bodily injury allegedly suffered on February 7, 1969. On February 19, 1971, a second suit was filed in the United States District Court for the Northern District of Mississippi by one Kenneth Bradley against FS, seeking damages on account of bodily injury allegedly suffered on July 18, 1969. Both of these suits involved claims for bodily injury resulting from professional services rendered by FS on the job site at Amchitka Island, Alaska.

FS informed USFG of these two personal injury suits and called upon USFG to defend both suits in accordance with the provisions of the liability insurance policy. USFG refused to defend either suit, basing its refusal on the exclusion clause referred to above. Accordingly, FS employed private counsel to defend the two suits. It was stipulated that the costs to date of the successful defense in the Williams' suit was $30,772.65, and that the costs of the defense in the Bradley case were $13,027.77. In addition, FS was required to pay $30,000 as part of a compromise settlement dismissing the Bradley action.

Pursuant to its contract with the Atomic Energy Commission, FS assigned its claim against USFG to the United States. The Government then demanded that USFG pay for the costs incurred in the defense of the Williams and Bradley suits, including the $30,000 paid as a part of the compromise settlement with Bradley. USFG refused, and the United States then instituted

the present action against USFG in the United States District Court for the Northern District of Oklahoma.

The policy of insurance with which we are here concerned was executed in Oklahoma. It is the Government's position that, under Oklahoma law, USFG had a duty to defend, even assuming that it might have eventually developed that by virtue of the exclusion clause referred to above it had no duty to pay any judgment thereafter entered against FS. It is the position of USFG that, under Oklahoma law, it had no duty to defend a suit where it would not be liable under its policy contract for any recovery had therein. Both sides moved for summary judgment. The trial court granted USFG's motion and entered summary judgment in its favor. The United States now appeals.

Both parties agree that this case turns on the interpretation to be given the insurance contract under local Oklahoma law. The United States relies on *Conner v. Transamerica Insurance Co.,* 496 P.2d 770 (Okl. 1972). USFG would distinguish the *Conner* case, and relies on *United States Fidelity & Guaranty Co. v. Briscoe,* 205 Okl. 618, 239 P.2d 754 (Okl.1952) and *Torres v. Sentry Insurance,* 558 P.2d 400 (Okl.1976).

The *Conner* case, which the Government claims is dispositive of the present controversy, was based on an earlier decision of the Supreme Court of California in *Gray v. Zurich Insurance Co.,* 65 Cal.2d 263, 54 Cal. Rptr. 104, 419 P.2d 168 (1966). *Gray* involved a comprehensive personal liability insurance policy. The basic insuring provisions were virtually identical to those in the instant case. The insurer agreed to pay on behalf of the insured all sums which the insured shall become legally liable to pay as damages because of bodily injury or property damage. The insurer also agreed to defend any suit against the insured alleging such bodily injury or property damage and seeking damages which are payable under the policy, even if the allegations are groundless, false or fraudulent. Like the policy in the instant case, the policy also contained an exclusion. The exclusion in

*Gray* provided that the policy did not apply if the bodily injury or property damage was caused intentionally by or at the direction of the insured. These policy provisions in the *Gray* case are set forth in Appendix B.

In *Gray* the insured was sued for an intentional assault. The insured requested the insurer to defend the suit, and the insurer refused on the ground that the suit alleged an intentional tort which fell outside the coverage of the policy by virtue of the exclusion. The insured, presumably with other representation, thereafter unsuccessfully defended the suit on the grounds of self defense and suffered a judgment in the amount of $6,000. The insured then brought suit against the insurer charging the latter with a breach of its duty to defend and asking for a money judgment to cover expenses incurred in defense of the action, as well as the judgment rendered against him. The trial court entered judgment for the insurance company and the insured appealed.

On appeal, the Supreme Court of California reversed the trial court and remanded the case with directions to enter judgment in favor of the insured and to hold a further hearing on the issue of damages. In so holding that Court held, *inter alia,* that the basic promise "to defend" was broad and apparently all-inclusive, and that it was not clear that the exclusion excused the insured from its duty to defend a suit based on any intentional tort, even though under the exclusion the insurer would not have to pay a judgment rendered against its insured for an intentional tort. In other words, the California Supreme Court in *Gray* distinguished between the insurer's obligation "to pay" and its obligation "to defend" and held that, although the exclusion in *Gray* relieved the insurer from any obligation to pay a judgment entered against its insured for an intentional tort, it was not clear that the exclusion excused the insurer from a duty to defend its insured when the latter was sued for an intentional tort. Such uncertainty in the policy, under settled principles, was resolved in favor of the insured. As will be developed later, we regard the

situation in *Gray* to be virtually the same as that in the present case.

As indicated, the Oklahoma Supreme Court in *Conner* cited *Gray* with approval. Indeed, *Gray* was the keystone for *Conner*. *Conner* involved a professional liability policy issued an attorney by the insurer. Under the insuring agreements, the insurer agreed to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of any act or omission by the insured. The insurer also agreed "with respect to such insurance as is afforded by this policy . . . [to] defend any suit against the insured alleging such act and omission and seeking damages which are payable under the terms of this policy, even if the allegations of the suit are groundless, false or fraudulent." An exclusion in the policy involved in *Conner* provided that the policy did not apply to any dishonest, fraudulent, criminal or malicious act or omission of the insured. The insuring agreements and the exclusion in *Conner* are set forth in Appendix C.

The insured in *Conner* was sued for fraudulent, deceitful, dishonest conduct, and he requested the insurer to defend him in that action. The insurer initially assumed defense of the action, but later withdrew and declined to further defend on the ground that under the exclusion, the policy did not apply to any dishonest or fraudulent conduct on the part of the insured. The insured then employed other counsel to defend the action and the action was eventually dismissed. The insured next brought suit against the insurer for expenses which he had incurred in defense of the earlier action. The trial court in *Conner* entered judgment for the insured, and the insurance company appealed. On appeal the Supreme Court of Oklahoma affirmed the trial court, and in so doing followed the rule of *Gray*. The Supreme Court of Oklahoma recognized that there was contrary authority, but stated that "[i]n our view, *Gray* is the better reasoned case and the views expressed therein more nearly comport with the rules we have established for the interpretation of contracts of insurance." 496 P.2d at 774.

Before discussing the cases relied on by USFG, we would here note that, in our view, *Conner*, like *Gray*, is almost on all fours with the instant case. Here, as in *Conner*, there is initially a broad promise by the insurer to defend all actions brought against the insured seeking damages for acts or omissions of the insured. Here, as in *Conner*, there is an exclusion which provides that the policy does not apply under certain described circumstances. In *Conner* the policy did not apply to dishonest or criminal acts of the insured. In the instant case the policy does not apply where the bodily injury arises out of professional services rendered by the insured. In *Conner* the Supreme Court of Oklahoma held that the exclusion provision did not excuse the insurer from its duty to defend a suit brought against the insured based on dishonest and criminal acts. The rationale of *Conner* would seem to dictate that in the instant case the insurer was not excused from its duty to defend its insured when the latter was sued for bodily injuries arising out of professional services performed by the insured.

One of the cases relied on by USFG is *United States Fidelity & Guaranty Co. v. Briscoe*, 239 P.2d 754 (Okl.1952). In *Briscoe* the insuring agreement was to pay on behalf of the insured all sums which the insured shall become obligated to pay because of bodily injury or property damage "caused by accident." The same insuring agreement provided that the insurer had a duty to defend any suit against the insured "alleging such injury," which we take to mean injury "caused by accident." There was no exclusion clause before the court in *Briscoe*. The insuring provisions in *Briscoe* are set forth in Appendix D.

In *Briscoe* a policy of insurance was issued by the insurer to a contractor who had a contract with the State of Oklahoma to lay twelve miles of a cement highway, the policy being designed to cover the construction operations of the insured. In the course of his construction operation the insured used large quantities of bulk cement. Adjacent landowners later brought suit

against the insured for damages allegedly sustained because the atmosphere, over a period of time, had become impregnated with cement dust from the insured's handling of the bulk cement. The insured requested the insurance company to defend against the suit, and the company declined on the ground that under the insuring agreement it had no duty to defend since the injury complained of had not been "caused by accident." The insured then obtained other counsel to defend him, and later brought suit against the insurance company for his expense in defending such suit. The trial court entered judgment in favor of the insured, and the insurance company appealed.

On appeal the Supreme Court of Oklahoma reversed the trial court and remanded the case with directions to dismiss the insured's cause of action. That Court held that the injury complained of in the suit against its insured was not "caused by accident" and was therefore not within the coverage of the policy. It was in such circumstance that the Court stated that there was no duty to defend.

We do not believe that the present case is governed by Briscoe. Our belief in this regard is fortified by the pronouncement of the Oklahoma Supreme Court in Conner, which specifically distinguished Conner from Briscoe. In Conner, the Oklahoma Supreme Court stated that in Briscoe "the obligation to defend was limited, expressly, to any suit for damages caused by accident." In Conner, as in the instant case, the obligation to defend was not expressly limited.*

Briscoe cited with approval United States Fidelity & Guaranty Co. v. Reinhart & Donovan Co., 171 F.2d 681 (10th Cir. 1948). Since Reinhart is a Tenth Circuit case, and was an appeal from the United States District Court for the Western District of Oklahoma, brief comment should be made. Reinhart involved a policy of insurance issued by USFG to a contractor who was employed by an electrical cooperative to construct a rural electrification line. The basic purpose of the policy was to cover the operations of the contractor while performing under his contract with the electrical cooperative. Specifically, the insuring clause provided that the insurer would pay all claims for which the insured became legally liable because of bodily injury resulting from an accident and "arising out of the performance of work . . . in the course of the Insured's contracting business." The insurer also agreed to defend "all suits seeking to enforce such claims." The policy in Reinhart contained an exclusion clause which we need not here consider, since the trial court in Reinhart found that the exclusion was inapplicable, and, on appeal, this Court conceded that the exclusion was not applicable. The insuring clauses, together with the inapplicable exclusion are contained in Appendix E.

In Reinhart the insured contractor completed his work, and the electrical cooperative assumed control over the newly constructed line. Later, one of the employees of the electrical cooperative was seriously injured while working on the newly constructed line. The injured employee brought suit against the insured, i. e., the contractor who had built the line, and the latter requested the insurance company to defend. The insurance company refused to defend, and its insured (the contractor) successfully defended at its own expense the personal injury action. The insured then brought suit against the insurance company for the expense he had incurred in defending the action. The trial court entered judgment in favor of the insured, but on appeal this Court reversed.

As indicated, on appeal it was assumed that the exclusion clause had no application. However, this Court held that the injury there complained of was not within the basic coverage of the policy, which was limited to bodily injury sustained in an accident occurring "in the course of the In-

---

* Leggett v. Home Indemnity Co., 461 F.2d 257 (10th Cir. 1972), also relied on by USFG, is Briscoe's clone.

sured's contracting business." Since the accident in *Reinhart* occurred subsequent to the time when the insured contractor had completed its work, this Court concluded there was no basic policy coverage. It was in this setting that this Court said: "An insurer is not obligated to defend a groundless suit when it would not be liable under its policy contract for any recovery had therein." 171 F.2d at 685. We regard *Reinhart* to be distinguishable from the present case.

In a supplemental brief, USFG suggests that in a recent case the Oklahoma Supreme Court overruled, *sub silentio*, its earlier ruling in *Conner*, and readopted the rule in *Briscoe*. See *Torres v. Sentry Insurance*, 558 P.2d 400 (Okl.1976). In *Torres*, a medical doctor purchased a homeowner's insurance policy issued by Sentry Insurance Company. The policy, in general, insured against exposures incidental to home ownership and personal hazards outside of business risks that are not covered by other contracts of insurance. The insurer assumed the obligation to defend "any suit against the insured seeking damages on account of such bodily injury or property damage." The policy also contained an exclusion clause which provided, *inter alia*, that the policy did not apply to bodily injury arising out of the rendering of professional services, including medical services. The provisions of the insurance policy involved in *Torres* are set forth in Appendix F.

In *Torres* the insured, a doctor, was sued for medical malpractice. He requested the insurance company which had issued him the homeowner's policy to defend the malpractice suit. The insurance company refused, and the insured successfully defended the malpractice suit at his own expense. He then sued the insurance company to recover the expense incurred in defense of the malpractice suit. The trial court in *Torres* entered judgment for the insured. On appeal, the Oklahoma Supreme Court reversed.

In holding that the insurance company in *Torres* was not liable, the Oklahoma Supreme Court stated that a reading of the exclusionary language "and the policy as a whole" made it quite clear that the homeowner's policy was not intended to cover acts of medical malpractice. In such circumstance, the insurance company was held to have no duty to defend.

In *Torres* the Oklahoma Supreme Court cited with approval *Briscoe*. As indicated, the Oklahoma Supreme Court in *Conner* distinguished *Briscoe*. No mention of *Conner* is made in *Torres*. It is of more than passing interest to note that the same Justice of the Oklahoma Supreme Court who authored *Conner* also wrote *Torres*. We do not regard *Torres* as in anywise sapping the vitality of *Conner*. *Torres* simply falls under the rule of *Briscoe*, and the latter was held by the Oklahoma Supreme Court to be distinguishable from *Conner*.

Moreover, it is important to recall that the *Conner* decision was based on the California Supreme Court's opinion in *Gray*. The *Gray* opinion emphasizes that an unclear obligation to defend is to be interpreted in favor of an insured where the action filed against the insured is of the general "nature and kind" of action covered by the policy. 54 Cal.Rptr. at 111, 419 P.2d at 175. It is clear that a malpractice action, such as that at issue in *Torres*, is not of the general "nature and kind" of action covered by a homeowner's policy. *Torres* therefore did not present the issue resolved by *Conner*, and before us in the instant case.

In sum, we are of the firm view that the instant case falls within the purview of *Conner*. Here the insuring clauses, both as to the duty to pay and the duty to defend, are broad. It is unclear whether the exclusion clause in the instant policy has any effect on the duty to defend, as opposed to the duty to pay. Such unclearness, in *Conner*, was resolved in favor of the insured. So, in the instant case such unclearness should be resolved in favor of the insured. If the insurance company wants to protect itself in this type of a situation, it should be clearly stated that the exclusion clause applies to both the duty to pay *and* the duty to defend. The present policy does not so clearly state.

In reversing, we are fully aware that appellate courts should ordinarily give deference to the views of a resident federal district court judge concerning local state law. · However, we should not routinely accept such views when we are firmly convinced that an error has been made. We are firmly convinced that the instant case is governed by *Conner.*

Judgment reversed and cause remanded for further proceedings consonant with the views herein expressed.

### APPENDIX A

Relevant provisions of the insurance policy in issue in the present appeal are as follows:

COVERAGE A—BODILY INJURY LIABILITY

COVERAGE B—PROPERTY DAMAGE, LIABILITY

The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of

A. bodily injury or

B. property damage

to which this insurance applies, caused by an occurrence, and the Company shall have the right and duty to defend any suit against the Insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the Company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the Company's liability has been exhausted by payment of judgments or settlements.

. . . . .

### EXCLUSION (G307)

(Engineers, Architects and Surveyors Professional Liability)
It is agreed that the insurance does not apply to bodily injury or property damage arising out of any professional services performed by or for the Named Insured, including

1. the preparation or approval of maps, plans, opinions, reports, surveys, designs or specifications and

2. supervisory, inspection or engineering services.

### APPENDIX B

The court in *Gray v. Zurich Insurance Company*, 65 Cal.2d 263, 54 Cal.Rptr. 104, 419 P.2d 168 (1966), described the insurance policy there in issue as follows:

A "Comprehensive Personal Liability Endorsement" in the policy states, under a paragraph designated "Coverage L," that the insurer agrees "[t]o pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage, and the company shall defend any suit against the insured alleging such bodily injury or property damage and seeking damages which are payable under the terms of this endorsement, even if any of the allegations are groundless, false or fraudulent; but the company may make such investigation and settlement of any claim or suit as it deems expedient."

The policy contains a provision that "[t]his endorsement does not apply" to a series of specified exclusions set forth under separate headings, including a paragraph (c) which reads, "under coverages L and M, to bodily injury or property damages caused intentionally by or at the direction of the insured."

### APPENDIX C

Relevant provisions of the insurance policy at issue in *Conner v. Transamerica Insurance Company*, 496 P.2d 770 (Okl.1972) were quoted by the Oklahoma Supreme Court as follows:

### "INSURING AGREEMENTS

I. Coverage A—Individual Coverage.

To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of any act or omission of the insured, or of any person for whose acts or omissions the insured is legally responsible, and arising out of the performance of professional services for others in the insured's capacity as a lawyer  *  *  *

II. Defense, Settlement, Supplementary Payments.

With respect to such insurance as is afforded by this policy, the company shall:

(a) defend any suit against the insured alleging such act or omission and seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent; but the company may make such investigation and, with the written consent of the insured, such settlement of any claim or suit as it deems expedient  .  .  ..

### EXCLUSIONS

This policy does not apply:

(a) to any dishonest, fraudulent, criminal or malicious act of omission of any insured, partner or employee."

### APPENDIX D

The policy provisions quoted in *United States Fidelity & Guaranty Co. v. Briscoe*, 239 P.2d 754 (Okl.1952) were as follows:

"To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law, or assumed by him under contract as defined herein, for damages, including damages for care and loss of services, because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person or persons and caused by accident;

To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law, or assumed by him under contract as defined herein, for damages because of the injury to or destruction of property, including the loss of use thereof, caused by accident;

To defend, in his name and behalf, any suit against the insured, alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent."

### APPENDIX E

Provisions of the policy in issue in *United States Fidelity & Guaranty Co. v. Reinhart & Donovan Co.*, 171 F.2d 681 (10th Cir. 1948) were quoted by this Court as follows:

"To Pay all claims for damages, including claims in consequence of expense or loss of service, for which the Insured or a partner, officer, or director of the Insured is legally liable because of bodily injury or death of any person resulting from an accident during the policy period and arising out of the performance of work during the policy period in the course of Insured's contracting business, within any place named in Item 7 of the Declarations;  *  *  *.  .  .  .

To Defend all suits seeking to enforce such claims, even though groundless, and in connection therewith To Pay without limit all legal expenses;  *  *  *.  .  .  .

This policy does not apply to any claim:
1. Arising out of an accident caused by any defect in material or workmanship after completion of the Insured's work at the place where the accident occurs;  *  *  *."

### APPENDIX F

Provisions of the policy in issue in *Torres v. Sentry Insurance*, 558 P.2d 400 (Okl.1976) were quoted by the Oklahoma Supreme Court as follows:

"This Company shall have the right and duty, at its own expense, to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the alle-

gations of the suit are groundless, false or fraudulent, but may make such investigation and settlement of any claim or suit as it deems expedient.

.    .    .    .    .

This policy does not apply:

1. Under Coverage E—Personal Liability and Coverage F—Medical Payments to Others.

\*    \*    \*    \*    \*    \*

(c) to bodily injury or property damage arising out of the rendering of or failure to render professional services of any nature including, but not limited to any architectural, engineering, or industrial design services, any medical, surgical, dental or other services or treatments inducive to the health of persons or animals and any cosmetic or tonsoril services or treatment;"