Bernard M. JESKO, Appellee,

v.

AMERICAN–FIRST TITLE AND TRUST
COMPANY, Appellant.

No. 77–1455.

United States Court of Appeals,
Tenth Circuit.

Submitted Jan. 26, 1979.

Decided Aug. 15, 1979.

Rehearing Denied Sept. 26, 1979.

**816**

George W. Dahnke, of Hastie & Kirschner, Oklahoma City, Okl., for appellant.

Harvey L. Harmon, Sr., of Franklin, Harmon & Satterfield, Oklahoma City, Okl., for appellee.

Before McWILLIAMS, BREITENSTEIN and McKAY, Circuit Judges.

McKAY, Circuit Judge.

The American-First Title & Trust Company seeks reversal of a judgment against it for failing to defend the title of Bernard M. Jesko. At issue are questions of title policy interpretation, evidentiary sufficiency, and the propriety of certain awards of attorney's fees and interest.

Jesko's claim to the property protected by the title policy derived from a trust instrument executed by Anna Reisiger. This instrument named Jesko as the successor trustee [1] of 80 acres of Oklahoma property for the benefit of his minor son Lenard. The trust instrument was executed on a printed form from the book *How to Avoid Probate.* At least three typewriters had been used to fill in the form, and alterations had been made in the provisions. Jesko had retained the trust instrument in his family Bible until the death of Reisiger. Although Jesko had a close relationship with the settlor, he was not related to her. Following the death of Reisiger in 1974, her estate challenged the validity of the trust. When the Title Company declined to defend Jesko's title, he secured legal assistance himself. Ultimately, the litigation between the estate and Jesko was settled when Jesko agreed to the estate's demand for one-third of the Oklahoma realty. Jesko then sought recovery from the Title Company for the damages incurred.

The Title Company's main emphasis on appeal relates to the scope of its duty to defend. Two provisions of the policy are said to support the Company's position that it had no duty to defend Jesko's title. The first provision deals with policy exclusions:

The following matters are expressly excluded from the coverage of this policy:

. . . . .

3. Defects, liens, encumbrances, *adverse claims,* or other matters (a) created, suffered, assumed or agreed to by the insured claimant; (b) not known to the Company and not shown by the public records but *known to the insured* claimant either at Date of Policy or at the date such claimant acquired an estate or interest insured by this policy and not disclosed in writing by the insured claimant to the Company prior to the date such insured claimant became an insured hereunder; (c) resulting in no loss or damage to the insured claimant; (d) attaching or created subsequent to Date of Policy; or (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the estate or interest insured by this policy.

Record, vol. 4, at 688 (emphasis added). The second provision defines the Company's duty to defend its policyholder:

(a) The Company, at its own cost and without undue delay, shall provide for the defense of an insured in all litigation consisting of actions or proceedings commenced against such insured, or a defense interposed against an insured in an action to enforce a contract for a sale of the estate or interest in said land, to the extent that such litigation is founded upon an alleged defect, lien, encumbrance, or other matter *insured against by this policy.*

Record, vol. 4, at 688 (emphasis added).

Relying on the quoted policy provisions, the Title Company contends that its duty to defend is limited by the policy exclusions.

---

1. Reisiger was the trustee during her lifetime.

Stated another way, the contention is that there is no duty to defend unless the suit relates to a matter within the policy's coverage. It then argues that Jesko was not entitled to be defended because (1) the estate's claims against him were not subject to policy protection, and (2) Jesko did not inform the Title Company of known adverse claims at the time of policy application.

We believe the Title Company makes a plausible argument regarding the scope of its duty to defend. It is possible to construe that duty as coextensive with the policy coverage in general.[2] However, we need not rule definitely on this point. Even if the duty to defend is coextensive with general policy coverage, we believe that duty was breached in this case.

■ We are not persuaded by the Title Company's argument that the estate's claims against Jesko were not subject to policy protection. The complaint filed by the executor of Reisiger's estate attacked the trust on the following theories: (1) it had been revoked by a subsequent will; (2) it had been executed under a mistake of fact and law; (3) it had been executed as a result of undue influence; and (4) it had been procured by Jesko in violation of his fiduciary relationship with the settlor.[3] The Title Company argues that the only "viable" claims asserted by the estate reflected misconduct by Jesko himself. Inasmuch as Jesko knew of his own misconduct, the Title Company contends these claims

were excluded from coverage under exclusion 3(b). Even if we were to agree that the "viable" claims fit within the rubric of exclusion 3, we do not accept the Title Company's additional argument that the "nonviable" claims were so trivial as to be outside the scope of the policy. The Company identifies the revocation by will theory and the mistake of fact and law theory as less than viable. Noting that the title policy contains no provision requiring the Company to defend against "groundless, false or fraudulent" claims, the Company argues that it breached no duty to defend against these patently insubstantial claims. This contention is rather weak. The policy provides that the Title Company shall defend "in *all* litigation" of the relevant type, not simply that which involves a "viable claim."[4] Beyond this, while the purportedly trivial claims may not have had much to recommend them, they had to be met by Jesko in order to avoid default judgment. The Title Company's refusal to offer a defense certainly did not mean that a defense was unnecessary. We therefore reject the Title Company's argument that the estate's claims were outside the scope of its duty to defend Jesko.

■ The next argument raised by the Title Company is that Jesko was not entitled to a defense because he failed to notify the Company, as required by exclusion 3(b) of known adverse claims when he applied for his policy. In this connection, the Com-

2. Unlike the policy at issue in *United States v. United States Fidelity & Guar. Co.*, 601 F.2d 1136 (10th Cir., 1979), the policy before us is arguably not unclear as to "whether the exclusion clause . . . has any effect on the duty to defend, as opposed to the duty to pay." *Id.*, at 1141. Several prominent exclusions appear in large type before the section of the policy designated "Conditions and Stipulations." This latter section contains the description of the Company's duty to defend. The duty is clearly modified by the phrase: "to the extent that such litigation is founded upon . . . [a] matter insured against by this policy." In light of the clarity of this limiting language, it might be justifiable to regard the duty to defend as coextensive with the duty to pay. Of course, as noted in *United States Fidelity*, if an insurer is intent upon making the scope of its

duty to defend coextensive with its duty to pay, it would do well to specify "that the exclusion clause applies to both the duty to pay *and* the duty to defend." *Id.*

3. In an amended complaint the estate contended that the instrument should be declared void due to obvious alterations.

4. The Oklahoma Supreme Court has stated, in connection with an insurer's duty to defend a policyholder, that words of exclusion are to be narrowly viewed while words of inclusion are to be interpreted broadly. *Conner v. Transamerica Ins. Co.*, 496 P.2d 770, 774–75 (Okl. 1972). This position militates against our reading into the policy a coverage limitation based on claim viability.

pany alleges that Jesko knew or should have known that the estate had a claim adverse to his own. If the Title Company is to prevail on this argument, we must conclude that certain findings entered by the court below are clearly erroneous.

The evidence at trial demonstrated that Jesko had done nothing to protect his son's interest in the trust until after Reisiger died. At that point he consulted an attorney named Porter. Porter advised him to record the trust instrument and mentioned that there was a possibility that the estate would challenge the validity of the trust. Porter made two written inquiries to the estate's attorney asking whether the estate would question the trust. When no response was forthcoming, Porter closed the file, sent Jesko a final bill, and suggested that Jesko check with the New Mexico probate court regarding what assets the estate had identified for probate.

Jesko subsequently obtained the services of another attorney, Black, who assisted him in filing an acceptance of appointment as trustee. Black also prepared a title opinion regarding the land subject to the trust. Aside from a potential problem regarding gift taxes, Black's title opinion placed no qualification on the title.

Jesko secured the title policy in March of 1975, following his consultation with Black, but before the estate filed suit. The Title Company issued a $50,000 policy, relying on the title opinion produced by Black.

Among the oral findings made by the trial court, the following are pertinent. Jesko was found to have been "absolutely honest" in his relationship with Reisiger. Record, vol. 13, at 387. No undue influence had been exercised, and there was no evidence of wrongdoing. Although indicating its disapproval of "do-it-yourself" estate planning, the court found nothing legally wrong with the trust instrument, and it determined that Jesko had disclosed "all the facts that he knew" to attorneys Porter and Black. *Id.* at 388. Furthermore,

there [was] nothing wrong with Mr. Jesko insuring this title. I don't think he had any idea that there was anything wrong with this title. He may have had some premonition somewhere. That is common that kinfolks are prone to litigate if they can after the death of a person like this. He may have been fearful that some litigation could possibly be filed.

*Id.* at 390–91. Concluding that Jesko's "premonition" did not amount to knowledge of an adverse claim, the court decided that there was no doubt about Jesko being entitled to prevail.

Our review of the record reveals that there is substantial evidence to support the court's finding that Jesko had no actual knowledge at the time of policy application that there was a claim adverse to his interest. A more difficult question is whether he should be charged with constructive knowledge of such a claim.

The Title Company asserts several theories for charging Jesko with knowledge of the estate's adverse claim. Much reliance is placed on evidence that Jesko altered the trust instrument. But this reliance is absolutely misplaced given the trial court's express finding that Jesko had committed no wrongdoing. The only substantial argument is that certain advice from attorney Porter made it incumbent upon Jesko to discover whether the New Mexico probate court records showed the estate as claiming the Oklahoma realty. In effect, the Title Company argues that Jesko had sufficient inquiry notice to charge him with knowledge of the adverse claim.

We are not persuaded by this contention. Jesko's attorney had received no response from the estate after sending several surprisingly direct invitations to challenge Jesko's title.[5] It was conceded by Porter, who testified for the Title Company, that one reasonable conclusion to be drawn from the silence was that there was no adverse

5. In one of these inquiries, the attorney wrote: "I am wondering whether or not you will be denying the validity of this Trust or attempt to set aside the Trust relationship concerning said property." Record, vol. 5, at 833.

claim.[6] Furthermore, there is no document in the record to indicate that a check of the New Mexico probate records at that time would have revealed that the estate was claiming the Oklahoma realty. Jesko did ask one of Reisiger's heirs about the estate's intentions regarding the Oklahoma property, but learned nothing about an adverse claim. Although we acknowledge that Jesko could have done more to discover what the estate intended, we do not believe the law required him to do more. The results of the inquiries he made, directly and through Porter, support the trial court's implicit conclusion that Jesko should not be charged with knowledge he lacked. We therefore reject the Title Company's contention that Jesko's failure to notify it of the adverse claim at the time of the policy application removed the protections of the policy.

■ In view of our rejection of the Title Company's other arguments, two matters relating to the amount of the judgment must also be considered. First, the Company discerns error in the awarding of certain attorney's fees as an element of damages. The Company does not quarrel with awarding damages for attorney's fees generated in the defense of Jesko's title, but it contends that a portion of the award reflected work in pursuing claims against the Title Company itself. This latter portion, it is contended, was unrecoverable under Oklahoma law. We agree.

That portion of the attorney's fees which Jesko was forced to incur in order to defend the title against the estate is awardable as an item of damages proximately caused by the Company's breach of its contract to defend the title. *See* D. Dobbs, *Handbook on the Law of Remedies* 195–96 (1973). An award for attorney's fees incurred in the action against the Title Company, by contrast, can be sustained only if it is a cost appropriately taxable to the losing party. Oklahoma law generally does not allow attorney's fees to be assessed as costs unless a statute or contractual arrangement provides otherwise. *See e. g., Goodman v. Norman Bank of Commerce*, 565 P.2d 372, 373 (Okl.1977); *Globe & Republic Insurance Co. v. Independent Trucking Co.*, 387 P.2d 644, 647 (Okl.1963). The insurance contract in this case does not provide for fees to be awarded to the policyholder when suing the insurer for failing to provide coverage. Neither does the instant suit come within the scope of Okla.Stat.Ann. tit. 12, § 936 (West Supp.1978).[7] The most arguably applicable portion of that statute, which allows fees to be awarded for successful suits for "labor or services," appears to apply only to suits brought to recover for labor or services rendered, and thus would not cover suits for withholding of insurance benefits.[8] *See Hamilton v. Telex Corp.*, 576 P.2d 769, 770 (Okl.1978); *Russell v. Flanagan*, 544 P.2d 510, 512 (Okl.1975).

We acknowledge that the record does not clearly indicate which portion of the $12,835.76 in fees assessed by the court was actually incurred by Jesko's attorney in legal actions against the Title Company. It will be necessary, upon remand, for this issue to be more fully explored.

■ The Title Company's second contention relative to the amount of the judgment concerns the award of prejudgment interest

---

6. Record, vol. 13, at 174.

7. The text of this provision is as follows:

In any civil action to recover on an open account, a statement of account, account stated, note, bill, negotiable instrument, or contract relating to the purchase or sale of goods, wares, or merchandise, or for labor or services, unless otherwise provided by law or the contract which is the subject to [sic] the action, the prevailing party shall be allowed a reasonable attorney fee to be set by the court, to be taxed and collected as costs.

8. The trial court did refuse to assess as costs some of the legal fees incurred by Jesko below. Following the settlement between Jesko and the estate, Jesko pursued the Title Company with new counsel. Correctly interpreting § 936, the court disallowed an award for these fees. But the difficulty is that Jesko's earlier counsel brought the Title Company into the action as a third party defendant and incurred fees in connection with that claim even as the estate's contentions were being countered. These fees should not have been assessed.

entered by the trial court.[9] The Company argues that any damages suffered by Jesko were unliquidated until judgment, and that, in this situation, Oklahoma law does not permit prejudgment interest to be assessed.

The Oklahoma statute dealing with interest upon damages provides:

> Any person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day. . . .

Okla.Stat.Ann. tit. 23, § 6 (West 1955). The only question is whether Jesko's damages were "certain, or capable of being made certain by calculation" prior to judgment.[10]

In *Liberty National Bank & Trust Co. v. Acme Tool Division,* 540 F.2d 1375 (10th Cir. 1976), we relied on several Oklahoma authorities in concluding that a particular claim was unliquidated. The determining factor in that case was the prejudgment uncertainty of the market value of the property in issue. That value was not established until the court rendered judgment. In this case, a similar uncertainty existed before judgment. The most significant damage suffered by Jesko stemmed from his settlement with the estate, in which the estate dropped its complaint against Jesko in exchange for one-third of the Oklahoma realty. Inasmuch as the extent of Jesko's loss was not mathematically ascertainable until the court placed a value on the land, prejudgment interest on this loss should not have been granted. *See Liberty National Bank & Trust Co. v. Acme Tool Division,* 540 F.2d at 1383. We therefore reverse this aspect of the trial court's decision.[11]

A final matter may be readily disposed of. Contending that the Title Company's arguments on appeal are frivolous, Jesko claims a right to additional damages. This claim itself borders on the frivolous, and we reject it.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

---

9. Jesko argues that this issue is not properly before us because the Title Company failed to raise a timely objection to the award below. Apparently overlooked by Jesko is our earlier decision in *National Fire Ins. Co. v. School Dist. No. 68,* 115 F.2d 232, 234 (10th Cir. 1940), in which we ruled that an error in awarding prejudgment interest was fundamental. Although the *National Fire* decision is of rather ancient vintage, our attention has been drawn to no authority which would require us to reconsider the view expressed in that case.

10. Jesko suggests that Okla.Stat.Ann. tit. 23, § 22 (West 1955) is applicable. This provision mandates a prejudgment interest award in cases involving breaches of obligations "to pay money only." Although an insurance contract does give rise to an obligation to pay money when there is a covered loss, a title insurance policy involves more obligations than one. Indeed, this case arises out of the breach of another obligation—the duty to defend.

11. Although of lesser significance, prejudgment interest was also allowed on the attorney's fees and litigation expense awards. In light of our disposition on the attorney's fees issue, it will be necessary, upon remand, for the trial court to make adjustments in the interest awarded on those fees. We note that it would be entirely appropriate to award prejudgment interest on the fees incurred in defending against the estate's claims, for those fees constituted damages that were capable of ascertainment upon the settlement between the estate and Jesko. In like manner, the award of prejudgment interest based on litigation expenses was appropriate to the extent those expenses were incurred in defending against the claims of the estate. Such expenses became liquidated upon settlement of the estate's claims and constituted damages resulting from the Title Company's breach of contract. Expenses incurred in litigation against the Title Company itself constituted costs of the action rather than damages; awarding prejudgment interest on such expenses is improper.