NATIONAL INS. UNDERWRITERS v. WALKER.

No. 34801.    April 1, 1952.

Rehearing Denied May 6, 1952.

Application for Leave to File Second Petition for Rehearing Denied July 8, 1952.

*245 P. 2d 737.*

W. E. Green, J. C. Farmer, Robert J. Woolsey, Otho Flippo, and Jack B. Bailey, Tulsa, for plaintiff in error.

Hughey Baker, Tulsa (Robert N. Wilde, Tulsa, of counsel), for defendant in error.

O'NEAL, J. On the 13th day of June, 1949, the National Insurance Underwriters, a reciprocal insurance exchange of St. Louis, Missouri, issued its combination aircraft policy to A. R. Walker of Broken Bow, Oklahoma, insuring an airplane owned by Walker, based at Brown's Airport at Tulsa, Oklahoma.

On the 30th day of June, 1949, the airplane was damaged at the Brown Airport under circumstances hereinafter noted. The insurance carrier denied liability under its policy. Upon trial the court instructed a verdict in

favor of plaintiff in the sum of $1,-488.57, and, from the order overruling the insurance carrier's motion for a new trial, this appeal is taken. The parties are hereafter referred to as they appeared in the trial court, that is, A. R. Walker, as plaintiff, and the National Insurance Underwriters, an insurance corporation, as defendant, or, in the alternative, as the insurance carrier. The admitted facts disclose that the insurance policy was issued by defendant on June 13, 1949, and that it would expire on June 13, 1950; that the accident and resulting damage to the plane occurred on June 30, 1949. Plaintiff paid the premium provided for all coverage under Schedule "A" of the policy. That the damage to the airplane amounted to the sum of $1,488.57 is not controverted.

It is the plaintiff's contention that the instructed verdict in his favor is supported under the terms of the policy. That certain provisions thereof were ambiguous, and that, therefore, the court properly admitted oral testimony as to the alleged technical meaning of the word "taxiing" as that word is employed in the policy.

The defendant contends that there is no ambiguity in the contract and, as properly construed, the insurance carrier is not liable for the damage resulting to plaintiff's airplane. That the contract not being ambiguous, the court improperly permitted plaintiff to establish by oral testimony what was meant by the term "taxiing". Moreover, that the word "taxiing" is defined in the policy and that, therefore, the contracting parties are bound by the definition of that word so defined.

The accident and resulting injury to the airplane occurred under the following circumstances: On the 30th day of June, 1949, at approximately 7:30 in the morning, plaintiff, an experienced aviator, accompanied by three companions, arrived at the Brown Airport near Tulsa. They went into the hangar, rolled the plane out of the south door, facing it in an easterly direction. Plaintiff's automobile was parked some distance immediately south of the right wing of the plane. The cause of the accident is inexplicable. After plaintiff and his companions took their seats in the plane, plaintiff pressed the starter button, which caused the plane to pull around in a semicircle, the right wing hitting plaintiff's automobile, after which the plane partly entered the south door of the hangar, part of the plane hitting the side hangar doors, resulting in damage to the wing and the prop, and tore the motor mounts up and did other damage to the plane.

The plaintiff's object in pressing the starter button was to warm up the motor prior to taxiing it to the runway, the plaintiff stating it is desirable to warm up the oil temperature, which usually requires about five minutes on the type of plane he was operating. One other circumstance should be noted. The left landing wheel of the plane seems to have remained in place as the plane's right wheel made the semicircle before the plane's wings struck the sides of the entrance door of the hangar.

The pertinent provisions of the policy necessary for consideration are the following: On the face of the policy, under the title Schedule of Coverage, Subdivision "A", we find: "A" All Risk Ground (excluding taxiing, but including Fire, all circumstances except resulting from collision), under the subtitle "Insuring Agreements", we note the following provision, Coverage "A" All Risk Ground: "To pay any loss of or damages to the aircraft while not taxiing or in flight; and loss or damage occurring while taxiing or in flight caused by fire, except fire resulting from collision, but including resultant collision damage; but only for the amount of each separate loss when determined in excess over the deductible sum, if any, stated in item (4) of the declarations."

Under the subtitle "Conditions", we find the policy sets forth certain definitions to words used in the policy such as the word "flight", "aircraft", "disappearance", "fire", "theft", "passengers", "occurrences", etc. That among such words we also find the word "taxiing", which the policy defines as follows: "Taxiing: The word taxiing hereafter used in this policy shall mean the period when the aircraft is on the land or water and moving under its own power or momentum generated thereby, other than for the purpose of taking off or landing."

In the trial court plaintiff contended that the contract of insurance as applied to the quoted provisions, supra, was ambiguous, which theory being adopted by the court, plaintiff was permitted to introduce evidence of witnesses qualified in the operation of airplanes to testify that as the term "taxiing" is understood among airplane pilots it means: "The airplane being moved under its own power and under the control of the pilot". One pilot answered the question as follows: "Well, the airplane has to be under control, and has to be intended. I mean by that—that you start the airplane; you've got to have it under control and taxi it to the end of the field, or wherever you're going".

A flight school operator with 3,500 flight hours to his credit stated that from the facts as testified to by plaintiff with reference to the circumstances of the accident, plaintiff was not taxiing. He further stated: "It is good procedure to wait, after starting the engine, until after the oil pressure comes up and until the cylinder head temperature gets to 80 degrees centigrade before you start taxiing".

Counsel state that the question for our determination is a novel one and that they have been unable to find either controlling or persuasive authorities or cases to assist in a proper analysis of the contract provisions drawn in dispute. Plaintiff cites numerous cases to the effect that when an insurance contract is ambiguous and obtuse, that oral testimony is admissible to establish the actual intent of the parties. As we construe the policy of insurance, we find no difficulty in delineating the respective rights and obligations of the contracting parties unaided by extraneous evidence.

Our statutory law on interpretations of contracts is expressive of the wisdom of the common law and furnishes us rules here applicable. Among such rules we find that "intent controls", "that language governs", "that intention is ascertained from the writing", "that effect should be given every part", "interpretation favors validity", "words to be taken in their ordinary sense", "technical words to be used as understood by the profession", repugnancy should be reconciled and that if there is uncertainty the language must be construed most strongly against the person causing the uncertainty * * *," etc. With this yardstick we will measure the above-quoted provisions of the policy of insurance.

As pointed out by counsel for defendant, the policy in its schedule of coverage embraces three separate and distinct coverages, but that plaintiff is only covered by Subdivision "A" of the schedule. Subdivisions "B" and "C" immediately following Subdivision "A" may be properly noted to ascertain if they bear any relationship to Schedule "A". Their exact words are: Schedule "B" All Risk While Taxiing (see "taxiing" definition). Schedule "C" All Risk While in Flight (see "flight" definition). It will be observed in Schedule "B" we are advised to (see "Taxiing" definition) and in Schedule "C" we are advised to (see "flight" definition) but no such definitive expression is employed in Schedule "A" of the coverage and, as already noted, the expression in Schedule "A" is (A) All Risk Ground: (excluding taxiing but including Fire, all circumstances except resulting from collision). Schedule "A" for which the premium was paid, realistically construed as we view its

language, covers the accident to plaintiff's plane. He was not taxiing the plane as that term is commonly understood either by the laity or the profession. The circumstances of the accident, as heretofore noted, are not in dispute. Moreover, the intent of Schedule "A" was to cover all risks to the airplane while it was on the ground and not taxiing at the time.

Specifically, the defendant contends that the airplane was moving under its own power, that is, that it was moving under the power and impetus of its own engine; that therefore it was taxiing; that when plaintiff pushed the starter button on the plane it moved and, having moved, it was taxiing as that term is defined by the terms of the policy.

Clearly, the provision to pay for any loss of or damage to the aircraft while not taxiing is not ambiguous and needs no construction. It in plain and common language means just what it says. The defendant, however, says that where the parties have by contract defined the word "taxiing" no other definition or meaning of the word can be considered. Defendant then argues that under the contract definition under the heading of Conditions, the word "taxiing" is defined as: "The word taxiing, wherever used in the policy, is that period when it is moving under its own power or momentum generated thereby other than for the purpose of taking off or landing".

That as the airplane at the time of the accident moved, as shown by the evidence; that it moved under its own power or was moving under the momentum of its engine, therefore, the accident and resulting injury to the plane is not covered by the policy.

We cannot agree with the insurance company's interpretation thus given for the reason that the policy under its coverage "A" expressly contracts to pay for damages to the aircraft while it is not taxiing. Clearly, the plane was not taxiing at the time of the accident. The plane was moving under its own power and it was moving at a time when there was no immediate purpose of taking off. Thus the accident and resulting damage came under the exact provisions of the definition. To hold otherwise would create an absurdity and thus exclude liability under all conceivable circumstances at times when the plane was not taking off or landing.

We are of the view and so hold that the policy of insurance is not ambiguous, that the error of the trial court in holding it to be ambiguous and permitting oral testimony to be introduced was improper, but a harmless error. That the trial court's order sustaining plaintiff's motion for judgment at the close of the evidence was properly entered.

The judgment in favor of plaintiff is affirmed.

ARNOLD, C.J., and WELCH, CORN, GIBSON, DAVISON, JOHNSON, and BINGAMAN, JJ., concur.