313 P.2d 1062

**PECOS VALLEY FLYING SERVICE,**
**Inc., Plaintiff-Appellee,**

v.

**Albert Waugh BRAYLEY, Defendant-**
**Appellant.**

No. 6169.

Supreme Court of New Mexico.

Aug. 1, 1957.

Stagner & Sage, Carlsbad, for appellant.

Reese, McCormick, Lusk & Paine, Carlsbad, for appellee.

KIKER, Justice.

Both appellant and appellee agree as to the "Statement of the Case" and the "Statement of the Facts"; we can, therefore, do no better than to quote them:

## Statement of the Case

"This is an action to recover for damages to plaintiff's airplane under an insurance policy issued by defendant.

"The policy insures against all ground losses, with a $100.00 deduction, except while 'taxiing.' To losses sustained while 'taxiing' a $1,075.00 deduction applies.

"The airplane was damaged on the ground. Plaintiff said it was not 'taxiing' and demanded full payment minus the $100.00 deduction. Defendant said it was 'taxiing' and offered payment less the larger deduction. Plaintiff refused and filed suit.

"No evidence was introduced at the trial. The case was submitted upon facts admitted by the pleadings, and upon additional stipulated facts.

"The trial Court held that the airplane was not 'taxiing' and gave plaintiff judgment for the loss minus the $100.00 deduction. From the judgment defendant appeals.

## Statement of the Facts

"Plaintiff is a corporation and on June 5, 1954 purchased from Sayre and Toso, Inc. an Aircraft Hull Insurance Policy. By Stipulation the present defendant has been substituted for Sayre and Toso, Inc.

"The policy provided coverage for 'any loss of or damage to the aircraft * * * except while in flight', subject to a $100.00 deduction. For 'taxiing losses' a $1,075.00 deduction applied.

"The policy defines 'Taxiing' as:

"'* * * while the aircraft is moving under its own power or momentum generated thereby on land or water other than while in motion for the actual taking off run or completion of landing run.'

"The insured airplane had a 'tricycle' landing gear consisting of two main wheels and one nose wheel. On the morning of September 14, 1954, the airplane was parked at the airport at Tampico, Mexico. Hugh M. Moutray, a licensed pilot and approved by the policy, entered the airplane. His purpose was to taxi to take-off and then proceed on a flight.

"The airplane was parked on level sod softened by several days of rain. Hugh M. Moutray started and warmed up the engine. He anticipated difficulty in taxiing on the soft ground and had an airport employee at each wing tip to aid in taxiing.

"Hugh M. Moutray applied power with the throttle and the airplane moved forward three or four feet. He

then saw his brother, Jim B. Moutray, waving to him, and, not understanding the signals, brought the airplane to a full stop. Jim B. Moutray directed that the airplane be turned to the right to miss a mud spot. Hugh M. Moutray released the brakes and applied power by advancing the throttle for the purpose of taxiing the aircraft.

"Applying power put downward pressure on the nose wheel, which broke through the ground into the remains of a cesspool, damaging the propellor and parts of the nose wheel assembly in the sum of $1388.25. As power was applied the aircraft did not advance forward along the ground to any perceptible degree but the impetus of the increased power and resultant downward force on the aircraft caused the nose wheel to go through the ground and into the hole beneath about sixteen inches, thereby causing the propellor to strike the ground.

"Plaintiff filed its Complaint on February 8, 1956, alleging that defendant 'has refused to make payment * * * except under the taxiing deductible provisions of said policy'. The case was argued on June 26, 1956 and Judgment was entered on July 12, 1956. * * *"

The trial court entered judgment for the plaintiff holding that his aircraft was damaged in the sum of $1,388.25; that the damage, in the terms of the policy was caused by a "ground loss" and not by a "taxiing loss". Under the agreed facts, therefore, the court deducted from the sum above stated one hundred dollars only as provided in the policy for ground loss and added to the net amount interest up to the date of the judgment and the court costs.

The sole question to be determined in the case is whether the airplane was "taxiing" within the meaning of the policy at the time of the loss; if it was "taxiing" then the amount deducted would be $1,075 and not a mere $100, so that the amount actually in dispute is the sum of $975.

Appellant (defendant) contends that the loss was sustained while the airplane was taxiing. He argues forcibly that the airplane had started out taxiing and had moved forward a few feet when, because of the signals given by a brother of the pilot the plane come to a complete stop and was stopped for a short time, after which the pilot placed his foot on the starter, turned on the power and the airplane, without perceptible movement of the wheels in any direction, nosed over and into the ground, thereby damaging the plane in the amount above stated.

It is to be recalled that the definition of taxiing is:

"*Taxiing*—While the aircraft is moving under its own power or momentum generated thereby on land or water other than while in motion

for the actual takeoff run or completion of the landing run".

Appellant further argues that the definition of taxiing does not in any way limit the "moving under its own power or momentum generated thereby"; whether it means forward or backward or downward on land or water. Appellant says that the contention of the appellee that:

"* * * even though 'the impetus of the increased power and resultant downward force on the aircraft caused the nose gear to go through the ground' still the aircraft was not 'taxiing' because 'As the power was applied the aircraft did not advance forward along the ground to any perceptible degree' and the airplane was not therefore 'moving under its own power' as defined by the policy".

Having thus outlined the contentions of the appellee, appellant says it is neither reasonable nor realistic. Appellant further contends that the taxiing had commenced; that the stop was a temporary one; that the pilot attempted and intended to resume taxiing and argues that the taxiing having once commenced included the temporary stop and that the damage of the aircraft would not have been sustained if the taxiing had not been commenced and if there had not been an attempt to resume it after stopping.

Appellee contends that the court was correct in allowing the one hundred dollars deductible feature of the policy because the aircraft was not taxiing at the time of the accident; he contends that the definition of taxiing refers to and means the precise time of the accident and that the words "own power" mean under its own mechanism without any assistance.

Appellee urges the rule that insurance policies are to be liberally construed in favor of the insured and exceptions and exclusions are to be construed strictly against the insurer. Supporting this contention appellee cites the Cyclopedia of Insurance Law by Couch, Vol. 1, § 188a at page 402; also 12 Am.Jur. § 252, page 795.

Appellee further urges that it is universally held that a contract of insurance be liberally construed in favor of the insured and that if there are provisions of doubtful meaning that they be construed strictly against the insurer, Nikolich v. Slovenska Nardona Podporna Jadnota, 33 N.M. 64, 260 P. 849; Gendron v. Calvert Fire Ins. Co., 47 N.M. 348, 143 P.2d 462, 149 A.L.R. 1310.

It seems that there are no cases precisely in point and that the case which most nearly is like the one before us is National Insurance Underwriters v. Walker, 206 Okl. 629, 245 P.2d 737, 739; both parties have cited this case. In this Oklahoma case the policy insured only under Schedule A, which reads:

"Coverage 'A' All Risk Ground: To pay any loss of or damages to

the aircraft while not taxiing or in flight; * * *"

The policy also defined taxiing:

"Taxiing: The word taxiing hereafter used in this policy shall mean the period when the aircraft is on the land or water and moving under its own power or momentum generated thereby, other than for the purpose of taking off or landing."

The facts in the Oklahoma case were that the accident occurred in the early morning. Plaintiff, an experienced aviator, with three companions, went to the airfield near Tulsa. They went into the hangar, rolled a plane out of the south door, facing it in an easterly direction. Plaintiff's automobile was parked some distance south of the right wing of the plane. The plaintiff and his companions took their seats in the plane and plaintiff pressed the starter button which caused the plane to pull around in a semi-circle, the right wing hitting plaintiff's automobile, after which the plane went partly into the south door of the hangar, part of the plane hitting the side hangar doors, resulting in damage to the wing, the prop and the motor mounts as well as other damage to the plane.

The facts just stated are almost, though not quite, in the language of the Oklahoma court. It was plaintiff's intention when he pressed the starter button, to warm up the motor prior to taxiing it to the runway. According to the plaintiff it required about five minutes to warm up the type of plane which he was operating. The trial court admitted testimony of experienced pilots as to the meaning of the word "taxiing". The Oklahoma court pointed out with respect to the interpretation of the contract that the common law has afforded certain rules such as that: "intention controls", "language governs", "intent is ascertained from the writing" and "effect should be given to every part", "words are to be taken in their ordinary sense" and "where there is uncertainty the language must be construed most strongly against the person causing the uncertainty". Said the Court:

"Schedule 'A' for which the premium was paid, realistically construed as we view its language, covers the accident to plaintiff's plane. He was not taxiing the plane as that term is commonly understood either by the laity or the profession. The circumstances of the accident, as heretofore noted, are not in dispute. Moreover, the intent of Schedule 'A' was to cover all risks to the airplane while it was on the ground and not taxiing at the time."

In our case it is clear that the pilot intended to taxi, it was his desire to taxi, but that the plane, after being stopped, did not move except that the power thrust the foremost part of it into the ground and through the covering of an old cesspool. This, we think, cannot be considered

taxiing, and we therefore agree with the conclusion reached by the trial judge.

The judgment should be and is hereby affirmed.

It is so ordered.

LUJAN, C. J., and SADLER and COMPTON, JJ., concur.

McGHEE, J., not participating.