**MAX TRUE PLASTERING COMPANY, Plaintiff,**

v.

**UNITED STATES FIDELITY AND GUARANTY COMPANY, Defendant/Third Party Plaintiff,**

v.

**BOB H. JOHNSON AGENCY and Jeff R. Johnson, Third Party Defendants.**

No. 85860.

Supreme Court of Oklahoma.

Feb. 27, 1996.

As Corrected March 5 and 8, 1996.

Joseph R. Farris, Jerry Reed, Judy R. Nathan, Tulsa, for Plaintiff, Max True Plastering Company.

Robert L. Magrini, John B. Hayes, Oklahoma City, for Defendant/Third Party Plaintiff, United States Fidelity & Guaranty Company.

Scott D. Cannon, Tulsa, for Third Party Defendants, Bob H. Johnson Agency and Jeff R. Johnson.

KAUGER, Vice Chief Judge.

Two issues are presented by the questions certified:[1] 1) whether the doctrine of reasonable expectations applies to the construction of insurance contracts in Oklahoma; and 2) what circumstances give rise to the doctrine's operation. Under the reasonable expectations doctrine, the objectively reasonable expectations of applicants, insureds and intended beneficiaries concerning the terms of insurance contracts are honored even though painstaking study of the policy provisions might have negated those expecta-

---

1. Title 20 O.S.1991 § 1602 provides in pertinent part:

   "The Supreme Court ... may answer questions of law certified to it by ... a United States District Court ... if there are involved in any proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court ..."

tions.[2] We find that the reasonable expectations doctrine may apply to the construction of ambiguous insurance contracts or to contracts containing exclusions which are masked by technical or obscure language or which are hidden in policy provisions.

## FACTS

The third-party defendant, Jeff R. Johnson (Johnson/agent), sold a fidelity bond to the plaintiff, Max True Plastering Company (True/insured), insuring True for some losses arising from employee dishonesty.[3] The bond was purchased from the defendant, United States Fidelity and Guaranty Company (USF & G/insurer).

In the summer of 1991, True discovered that employees[4] in his Dallas office had formed a corporation, LCR, Inc. (LCR), and that they were diverting True business to it. True filed suit against LCR and the employees in October of 1991. The following June, True wrote the agent notifying him of losses from employee dishonesty; and he claimed coverage under the USF & G policy. USF & G denied coverage on August 16, 1993, asserting that True had not complied with the policy's notice and proof of loss requirements and that losses of intellectual property, such as the diversion of job opportunities and lost profits, were not covered by the policy.

True filed suit against USF & G to recover under the policy on August 30, 1993. True contended that coverage existed either under the express terms of the policy or that he was insured because of his reasonable expectations that the losses were covered. On July 28, 1994, USF & G filed a third-party petition against Johnson and his agency claiming indemnity if True prevailed. USF & G and Johnson both filed motions for summary judgment on December 2, 1994. True filed an objection to USF & G'S motion on December 9th claiming coverage either under the plain reading of the policy or pursuant to his reasonable expectations. Finding no Oklahoma precedent to resolve the questions of law, the trial court certified two questions to this Court pursuant to the Uniform Certification of Questions of Law Act, 20 O.S.1991 § 1601 et seq., on July 14, 1995. We set a briefing cycle which was completed when the final reply brief was filed on October 30, 1995.

## I.

## UNDER OKLAHOMA LAW, THE REASONABLE EXPECTATIONS DOCTRINE MAY BE APPLICABLE TO CONSTRUE INSURANCE CONTRACTS.

■ True argues that although this Court has not expressly adopted the reasonable expectations doctrine, many of the principles applied in Oklahoma to the construction of insurance contracts conform to the spirit of the doctrine. It urges us to join the majority[5] of jurisdictions which have considered

---

**2.** *Johnson v. Farm Bureau Mut. Ins. Co.*, 533 N.W.2d 203, 206 (Iowa 1995); *Atwater Creamery v. Western Nat'l Mut. Ins.*, see note 5 at 277, infra; *State v. Underwriters at Lloyds London*, 755 P.2d 396, 400 (Alaska 1988); *American Family Mut. Ins. Co. v. Elliot*, 523 N.W.2d 100, 103 (S.D.1994); H. Wood, Jr., "The Insurance Fallout Following Hurricane Andrew: Whether Insurance Companies are Legally Obligated to Pay for Building Code Upgrades Despite the 'Ordinance or Law' Exclusion Contained in Most Homeowners Policies," 48 U.Miami L.Rev. 949, 956 (1994); 6B J. Appleman, *Insurance Law & Practice*, § 4254 at pp. 24–26 (1979); R. Keeton, "Insurance Law Rights at Variance with Policy Provisions," 83 Harv.L.Rev. 961, 966 (1970).

**3.** The policy provides in pertinent part:
"A. COVERAGE
  1. Covered Property: 'Money', 'securities', and 'property other than money and securities'...."

**4.** The facts certified do not indicate how many True employees may have been accused of wrongdoing. There is deposition testimony asserting that at least three employees were involved.

**5.** *Eli Lilly & Co. v. Home Ins. Co.*, 794 F.2d 710, 715 (D.C.Cir.1986), *cert. denied*, 479 U.S. 1060, 107 S.Ct. 940, 93 L.Ed.2d 991 (1987) (Applying Indiana law.); *Keene v. Insurance Co. of N. America*, 215 U.S.App.D.C. 156, 667 F.2d 1034, 1041 (1981), *cert. denied*, 455 U.S. 1007, 102 S.Ct. 1644, 71 L.Ed.2d 875 (1982), *reh'g denied*, 456 U.S. 951, 102 S.Ct. 2023, 72 L.Ed.2d 476 (1982); *Crawford v. Ranger Ins. Co.*, 653 F.2d 1248, 1251 (9th Cir.1981) (Applying Hawaii law.); *Macon Light House Revival Center, Inc. v. Continental Ins. Co.*, 651 F.Supp. 417–18 (M.D.Ga.1987) (Applying Georgia law.); *Commercial Union Assur. Co. v. Aetna Casualty & Sur. Co.*, 455 F.Supp. 1190, 1193 (D.N.H.1987) (Applying New Hamp-

the doctrine by recognizing it as part of Oklahoma law. USF & G and Johnson insist that insureds are adequately protected by existing principles applied to the construction of insurance contracts and they contend that those courts which have rejected the doctrine [6] offer the better reasoned opinions.

■ An adhesion contract is a standardized contract prepared entirely by one party to the transaction for the acceptance of the other. These contracts, because of the disparity in bargaining power between the draftsman and the second party, must be accepted or rejected on a "take it or leave it" basis without opportunity for bargaining— the services contracted for cannot be obtained except by acquiescing to the form agreement.[7] Insurance contracts are contracts of adhesion because of the uneven bargaining positions of the parties.[8] The doctrine of reasonable expectations has evolved as an interpretive tool to aid courts in discerning the intention of the parties bound by adhesion contracts.[9] It developed in part because established equitable doctrines were inadequate,[10] and it takes into account the realities of present day commercial practice.[11]

■ Under the doctrine, if the insurer or its agent creates a reasonable expectation of coverage in the insured which is not supported by policy language, the expectation will prevail over the language of the policy.[12]

shire law.); *Gleason v. Merchants Mut. Ins. Co.*, 589 F.Supp. 1474, 1480 (D.R.I.1984) (Applying Rhode Island law.); *Dronge v. Monarch Ins. Co.*, 511 F.Supp. 1, 4 (D.Kan.1979) (Applying Kansas law.); *Fritz v. Old American Ins. Co.*, 354 F.Supp. 514, 516 (S.D.Tex.1973) (Applying Texas law.); *Peerless Ins. Co. v. Brennon*, 564 A.2d 383, 386 (Me.1989); *Grinnell Mut. Reinsurance Co. v. Voeltz*, 431 N.W.2d 783, 785–86 (Iowa 1988); *Travelers Ins. Co., Inc. v. Jones*, 529 So.2d 234, 239 (Ala.1988); *Woodson v. Manhattan Life Ins. Co. of New York*, 743 S.W.2d 835, 839 (Ky.1987); *National Mut. Ins. Co. v. McMahon & Sons, Inc.*, 177 W.Va. 734, 739, 356 S.E.2d 488, 495 (1987); *Steigler v. Insurance Co. of N. America*, 384 A.2d 398, 400 (Del.Supr.1987); *Davis v. M.L.G. Corp.*, 712 P.2d 985, 989 (Colo.1986); *Meier v. New Jersey Life Ins. Co.*, 101 N.J. 597, 503 A.2d 862, 869 (1986); *Home Indem. Ins. Co. v. Merchants Distributors, Inc.*, 396 Mass. 103, 483 N.E.2d 1099, 1101 (1985); *Atwater Creamery Co. v. Western Nat'l Ins. Co.*, 366 N.W.2d 271, 278–79 (Minn.1985); *Kracl v. Aetna Casualty & Sur. Co.*, 220 Neb. 869, 374 N.W.2d 40, 44 (1985); *National Union Fire Ins. Co. v. Reno's Executive Air, Inc.*, 100 Nev. 360, 682 P.2d 1380, 1383–84 (1984); *Gross v. Lloyds of London Ins. Co.*, 121 Wis.2d 78, 358 N.W.2d 266, 270 (1984); *Darner Motor Sales v. Universal Underwriters*, 140 Ariz. 383, 389, 682 P.2d 388, 394 (1984); *Transamerica Ins. Co. v. Royle*, 202 Mont. 173, 656 P.2d 820, 824 (1983); *Great American Ins. Co. v. C.G. Tate Constr. Co.*, 303 N.C. 387, 279 S.E.2d 769, 774 (1981); *United States Fire Ins. Co. v. Colver*, 600 P.2d 1, 3–4 (Alaska 1979); *Collister v. Nationwide Life Ins. Co.*, 479 Pa. 579, 388 A.2d 1346, 1354 (1978), *cert. denied*, 439 U.S. 1089, 99 S.Ct. 871, 59 L.Ed.2d 55 (1979); *Mills v. Agrichemical Aviation, Inc.*, 250 N.W.2d 663, 673 (N.D.1977); *Crowell v. Federal Life & Casualty Co.*, 397 Mich. 614, 247 N.W.2d 503, 506 (1976); *Gyler v. Mission Ins. Co.*, 10 Cal.3d 216, 110 Cal.Rptr. 139, 514 P.2d 1219, 1221 (1973); *Pribble v. Aetna Life Ins. Co.*, 84 N.M. 211, 501 P.2d 255, 260 (1972); *Katz Drug Co. v. Commercial*

*Standard Ins. Co.*, 647 S.W.2d 831, 835 (Mo.App. 1983); *Atlantic Cement Co., Inc. v. Fidelity & Casualty Co. of New York*, 91 A.D.2d 412, 459 N.Y.S.2d 425, 429 (1983), *aff'd*, 63 N.Y.2d 798, 481 N.Y.S.2d 329, 471 N.E.2d 142 (1984).

6. *Allen v. Prudential Property & Casualty Ins. Co.*, 839 P.2d 798, 803–04 (Utah 1992); *American Country Ins. Co. v. Cash*, 171 Ill.App.3d 9, 120 Ill.Dec. 834, 524 N.E.2d 1016, 1018 (1988); *Meckert v. Transamerica Ins. Co.*, 108 Idaho 597, 701 P.2d 217, 221 (1985); *Sterling Merchandise Co. v. Hartford Ins. Co.*, 30 Ohio App.3d 131, 506 N.E.2d 1192, 1196 (1986).

7. *Rodgers v. Tecumseh Bank*, 756 P.2d 1223, 1226 (Okla.1988).

8. *Wilson v. Travelers Ins. Co.*, 605 P.2d 1327, 1329 (Okla.1980).

9. *Atwater Creamery Co. v. Western Nat'l Mut. Ins. Co.*, see note 5 at 278, supra; *Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.*, see note 5, supra; *Mills v. Agrichemical Aviation, Inc.*, see note 5 at 671, supra.

10. *Allen v. Prudential Property & Casualty Ins. Co.*, see note 6 at 806, supra; R. Keeton, "Insurance Law Rights at Variance with Policy Provisions, 83 Harv.L.Rev. 961 (pt. 1) & 83 Harv. L.Rev. 1381 (pt. 2) (1970). See also, W. Mayhew, "Reasonable Expectations: Seeing a Principled Application," 13 Pepp.L.Rev. 267, 269–72 (1986).

11. *Anderson v. Country Life Ins. Co.*, 180 Ariz. 625, 632, 886 P.2d 1381, 1388 (App.1994); Trakman, "Interpreting Contracts: A Common Law Dilemma," 59 Canadian Bar Review 241 (1981).

12. *Bensalem Township v. International Surplus Lines Ins. Co.*, 38 F.3d 1303, 1311–12 (3rd Cir.

The doctrine does not negate the importance of policy language. Rather, it is justified by the underlying principle that generally the language of the policy will provide the best indication of the parties' reasonable expectations.[13] The standard under the doctrine is a "reasonable expectation";[14] and courts must examine the policy language objectively to determine whether an insured could reasonably have expected coverage.[15] Courts adopting the reasonable expectations doctrine have found its rationale for interpretation of the usual insurance contract to be sensible.[16] They also recognize that insurance law is the basis of the doctrine.[17] These courts acknowledge that different rules of construction have traditionally been applied to insurance contracts because of their adhesive nature.[18] Tribunals embracing the doctrine recognize that it is consistent with numerous other interpretive rules pertaining to adhesion contracts.[19] Many of these rules are a part of Oklahoma law. For instance: 1) ambiguities are construed most strongly against the insurer;[20] 2) in cases of doubt, words of inclusion are liberally applied in favor of the insured and words of exclusion are strictly construed against the insurer;[21] 3) an interpretation which makes a contract fair and reasonable is selected over that which yields a harsh or unreasonable result;[22] 4) insurance contracts are construed to give effect to the parties' intentions;[23] 5) the scope of an agreement is not determined in a vacuum, but instead with reference to extrinsic circumstances;[24] and 6) words are given effect according to their ordinary or popular meaning.[25] Nevertheless, these rules of construction are often inadequate because they may fail to recognize the realities of the insurance business and the methods used in modern insurance practice.[26]

1994); *Johnson v. Farm Bureau Mut. Ins. Co.*, see note 2, supra; *Gordinier v. Aetna Casualty & Sur. Co.*, 154 Ariz. 266, 742 P.2d 277, 283–84 (1987).

13. *Frain v. Keystone Ins. Co.*, 433 Pa.Super. 462, 640 A.2d 1352, 1354 (1994) (While reasonable expectations of the insured are the focal points in interpreting the contract language of insurance policies, an insured may not complain that his or her reasonable expectations were frustrated by policy limitations which are clear and unambiguous.); *Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.*, see note 5, supra.

14. *Bracy v. American Family Mut. Ins. Co.*, 189 Neb. 631, 204 N.W.2d 174, 175 (1973); *Hubred v. Control Data Corp.*, 442 N.W.2d 308, 311–12 (Minn.1989); *Carlson v. New York Life Ins. Co.*, 76 Ill.App.2d 187, 222 N.E.2d 363, 367–68 (1966).

15. *Allstate Ins. Co. v. Keillor*, 450 Mich. 412, 537 N.W.2d 589, 591 (1995); *Louisiana Ins. Guaranty Ass'n v. Interstate Fire & Casualty Co.*, 630 So.2d 759, 764 (La.1994).

16. *Darner Motor Sales, Inc. v. Universal Underwriters Insurance Co.*, see note 5 at 402, 682 P.2d at 397, supra.

17. Id.

18. *Bering Strait School Dist. v. RLI Ins.*, 873 P.2d 1292, 1295 (Alaska 1994); *Stordahl v. Government Employees Ins. Co.*, 564 P.2d 63, 65 (Alaska 1977).

19. *Davis v. M.L.G. Corp.*, see note 5 at 990, supra.

20. *Littlefield v. State Farm Fire & Casualty Co.*, see note 25, infra; *Dodson v. St. Paul Ins. Co.*, see note 22, infra; *Wilson v. Travelers Ins. Co.*, see note 8, supra.

21. *Phillips v. Estate of Greenfield*, see note 23, infra; *Dodson v. St. Paul Ins. Co.*, see note 22, infra; *Great Northern Life Ins. Co. v. Cole*, 207 Okla. 171, 248 P.2d 608, 610 (1952); *National Aid Life Ass'n v. May*, 201 Okla. 450, 207 P.2d 292, 295 (1949); *Pitchford v. Electrical Workers' Ben. Ass'n*, 189 Okla. 82, 113 P.2d 591, 593 (1941).

22. *Dodson v. St. Paul Ins. Co.*, 812 P.2d 372, 376 (Okla.1991); *Wilson v. Travelers Ins. Co.*, see note 8, supra; *American Iron & Mach. Works Co. v. Insurance Co. of N. America*, 375 P.2d 873, 875 (Okla.1962).

23. *Phillips v. Estate of Greenfield*, 859 P.2d 1101, 1104 (Okla.1993); *Torres v. Kansas City Fire & Marine Ins. Co.*, 849 P.2d 407, 411–12 (Okla. 1993)

24. *Continental Casualty Co. v. Goodnature*, 170 Okla. 477, 41 P.2d 77, 79–80 (1935).

25. *Littlefield v. State Farm Fire & Casualty Co.*, 857 P.2d 65, 69 (Okla.1993); *Flitton v. Equity Fire & Casualty Co.*, 824 P.2d 1132, 1134 (Okla. 1992); *Continental Oil Co. v. National Fire Ins. Co. of Connecticut*, 541 P.2d 1315, 1320 (Okla. 1975).

26. *Darner Motor Sales Inc. v. Universal Underwriters Ins. Co.*, see note 5 at 394; Abraham, "Judge–Made Law & Judge–Made Insurance:

Of the thirty-six jurisdictions which have addressed the reasonable expectations doctrine, our research reveals only four courts which have rejected the rule. Although the Utah court recognized its duty to invalidate insurance provisions contrary to public policy, it refused to adopt the doctrine on the basis that its operation is not well-defined, and its deference to the occupation of the insurance field by the legislative and the executive branches.[27] The three other courts rejected the doctrine in favor of traditional construction guidelines relating to insurance contracts.[28]

Although the reasonable expectations doctrine has not been adopted per se in Oklahoma, several cases indicate that the reasonable expectations of an insured will be considered in the construction of insurance contracts. In *Homestead Fire Ins. Co. v. De Witt,* 206 Okla. 570, 245 P.2d 92, 94 (1952), this Court quoted from *Bird v. St. Paul Fire & Marine Ins. Co.,* 224 N.Y. 47, 120 N.E. 86–87, 13 A.L.R. 875 (1918) referring to the construction of an insurance policy:

> "Our guide is the reasonable expectation and purpose of the ordinary business man making an ordinary business contract. It is his intention, expressed or fairly to be inferred, that counts." (Emphasis supplied.)

In *Conner v. Transamerica Ins. Co.,* 496 P.2d 770, 774 (Okla.1972), we held that the insurer was obligated to defend its insureds in actions involving dishonest, fraudulent, criminal and malicious conduct or omissions. The Court's holding in *Conner* was buttressed by a quotation from *Gray v. Zurich Ins. Co.,* 65 Cal.2d 263, 54 Cal.Rptr. 104, 419 P.2d 168 (1966) providing in pertinent part:

> "... This language, in its broad sweep, would lead the insured **reasonably to expect** defense of any suit regardless of merit or cause.... The basic promise would

support the insured's **reasonable expectation** that he had bought the rendition of legal services to defend against a suit for bodily injury which alleged he had caused it, negligently, nonintentionally, intentionally or in any other manner ..." (Emphasis supplied.)

The *Conner* Court acknowledged that the views expressed in *Gray* comported with the rules established in Oklahoma for interpretation of insurance contracts.

The reasonable expectation doctrine is a double-edged sword—both parties to the insurance contract may rely upon their reasonable expectations. We refused to extend a homeowner's policy to provide coverage for negligent supervision or failure to control in *Phillips v. Estate of Greenfield,* 859 P.2d 1101, 1106 (Okla.1993). The rationale for denying coverage was based upon our belief that to do so would "negate the **reasonable expectations** of the parties as expressed in their contract."

In a series of cases involving the stacking of uninsured motorist coverage, we have relied on the reasonable expectations of the insurer and the insured. This Court held in *Scott v. Cimarron Ins. Co., Inc.,* 774 P.2d 456, 458 (Okla.1989) that an insurer was not required to allow stacking of uninsured motorist policies when only one premium for one vehicle had been collected. We distinguished other cases which had allowed stacking based on the "**reasonable contractual expectations** of the parties as reflected, in part, by the number and amount of uninsured motorist premiums paid." (Emphasis supplied.) We relied heavily on *Scott* in *Withrow v. Pickard,* 905 P.2d 800, 804–06 (Okla.1995) finding that, like the parties in *Scott,* the **contractual expectation** of the litigants was to have singular uninsured motorist coverage. On December 12, 1995, we denied certiorari in *Kramer v. Allstate Ins.,* No. 83,822 (Okla.Ct.App.1995). In *Kramer,* the Court of Appeals held that because the insurer had charged a higher uninsured mo-

---

Honoring the Reasonable Expectations of the Insured," 67 Va.L.Rev. 1151 (1981); Murray, "The Parole Evidence Process and Standardized Agreements under the Restatement (Second) of Contracts," 123 U.Pa.L.Rev. 1342 (1975).

**27.** *Allen v. Prudential Property & Casualty Ins. Co.,* see note 6 at 804, supra.

**28.** *Insurance Co. of North America v. Adkisson,* 121 Ill.App.3d 224, 76 Ill.Dec. 673, 459 N.E.2d 310, 313 (1984); *Casey v. Highlands Ins. Co.,* 100 Idaho 505, 509, 600 P.2d 1387, 1391 (1979); *Sterling Merchandise Co. v. Hartford Ins. Co.,* 30 Ohio App.3d 131, 506 N.E.2d 1192, 1196 (1986).

torist premium for coverage of multiple vehicles than it did for a single automobile that it had created the **reasonable contractual expectation** that the amount of uninsured motorist coverage would be correspondingly greater than the amount of coverage on one car. The Court of Appeals refused to allow the insurer to defeat that expectation of greater coverage by policy language purporting to limit coverage.

Some courts rely upon a form of the reasonable expectations doctrine [29] espoused in § 211 of the Restatement (Second) of Contracts [30] to protect the expectations of the contracting parties. Under the Restatement, reformation of an insurance contract is allowed if the insurer has reason to believe that the insured would not have signed the contract if the inclusion of certain limitations had been known.

In *Gay v. Hartford Underwriters Ins. Co.*, 904 P.2d 83 (Okla.1995) (*Gay II*), we held that the insurer was bound by the settled law of case of *Gay I*.[31] In *Gay I*, the Court of Appeals found that despite contract language providing for uninsured motorist coverage of $10,000/$20,000, the insurance company had acted in a manner indicating a mutual mistake warranting contract reformation to allow coverage of $100,000/$300,000. The insured in the *Gay* cases had on at least two occasions requested that his coverage be upgraded to $100,000/$300,000, and the insurance agent had indicated that the policy change would be made. Nevertheless, at the time Gay was injured, the policy language provided only for $10,000/$20,000 in coverage. We held in *Gay II* that the insurer was bound by the settled law of *Gay I* finding a mutual mistake. Although in doing so, we did not cite § 211 of the Restatement or refer to the reasonable expectations doctrine, the reasoning of the case coincides with the doctrine as outlined in § 211—the insurer was required to provide the higher coverage because of the expectations it had induced in the insured to believe that he had purchased

**29.** *State Farm Mut. Auto. Ins. Co. v. Falness,* 178 Ariz. 281, 872 P.2d 1233–34 (1994); *St. Paul Fire & Marine Ins. Co. v. Russo Bros., Inc.,* 641 A.2d 1297, 1300 (R.I.1994); *Lauvetz v. Alaska Sales & Serv.,* 828 P.2d 162, 165 (Alaska 1991).

**30.** Restatement (Second) of Contracts § 211 (1979) formulates the doctrine in a manner which allows a fact finder to look at the totality of the circumstances in determining the intent of the parties, rather than being strictly confined to the four corners of a standardized agreement. Section 211 provides:

> "(1) Except as stated in Subsection (3), where a party to an agreement signs or otherwise manifests assent to a writing and has reason to believe that like writings are regularly used to embody terms of agreements of the same type, he adopts the writing as an integrated agreement with respect to the terms included in the writing.
> (2) Such a writing is interpreted whenever reasonable as treating alike all those similarly situated, without regard to their knowledge or understanding of the standard terms of the writing.
> (3) Where the other party has reason to believe that the party manifesting such assent would not do so if he knew that the writing contained a particular term, the term is not part of the agreement."

Comment (b) to § 211 points out that parties regularly using standardized agreements ordinarily do not expect customers to understand or even to read the standard terms. Customers trust to the good faith of the party using the form and to the tacit representation that like terms are being accepted regularly by others similarly situated. Subsection (3) of § 211 is the Restatement's characterization of the reasonable expectations doctrine. Comment (f) to the subsection outlines a sensible rationale for interpretation of the usual insurance agreement. It provides in pertinent part:

> "Although customers typically adhere to standardized agreements and are bound by them without even appearing to know the standard terms in detail, they are not bound to unknown terms which are beyond the range of reasonable expectation.... [An insured] who adheres to the [insurer's] standard terms does not assent to a term if the [insurer] has reason to believe that the [insured] would not have accepted the agreement if he had known that the agreement contained the particular term. Such a belief or assumption may be shown by the prior negotiations or inferred from the circumstances. Reason to believe may be inferred from the fact that the term is bizarre or oppressive, from the fact that it eviscerates the non-standard terms explicitly agreed to, or from the fact that it eliminates the dominant purpose of the transaction. The inference is reinforced if the adhering party never had an opportunity to read the term, or if it is illegible or otherwise hidden from view. This rule is closely related to the policy against unconscionable terms and the rule of interpretations against the draftsman."

**31.** *Gay v. Hartford Underwriters Ins. Co.,* No. 76,577 (Okla.Ct.App.1992).

coverage of $100,000/$300,000 as uninsured motorist insurance.

█ Generally, absent an ambiguity, insurance contracts are subject to the same rules of construction as other contracts.[32] However, because of their adhesive nature, these contracts are liberally construed to give reasonable effect to all their provisions.[33] Our case law and the interpretive rules applied to insurance contracts demonstrate that Oklahoma law is consistent with the spirit and the policy of the reasonable expectations doctrine. The same case law coincides with the reasoning of the majority of jurisdictions adopting the doctrine.

## II.

### THE REASONABLE EXPECTATIONS DOCTRINE MAY APPLY TO THE CONSTRUCTION OF AMBIGUOUS INSURANCE CONTRACTS OR TO CONTRACTS CONTAINING EXCLUSIONS MASKED BY TECHNICAL OR OBSCURE LANGUAGE OR HIDDEN POLICY PROVISIONS.

█ True urges us to adopt a version of the reasonable expectations doctrine which does not require a finding of ambiguity in policy language before the doctrine is applied. Although they urge us not to adopt the doctrine, USF & G and Johnson argue that if the doctrine is to apply in Oklahoma, it should be limited to situations in which the policy contains an ambiguity or to contracts containing unexpected exclusions arising from technical or obscure language or which are hidden in policy provisions. We agree with this limitation.

If the doctrine is not put in the proper perspective, insureds could develop a "reasonable expectation" that every loss will be covered by their policy and courts would find themselves engaging in wholesale rewriting of insurance policies.[34] Therefore, the jurisdictions which have adopted the doctrine apply it to cases where an ambiguity is found in the policy language[35] or where the exclusions are obscure or technical or are hidden in complex policy language.[36] In these cases, the doctrine is utilized to resolve ambiguities in insurance policies and considers the language of the policies in a manner which

**32.** *Carraco Oil Co. v. Mid–Continent Cas. Co.*, 484 P.2d 519, 521 (Okla.1971); *National Life & Accident Ins. Co. v. Cudjo*, 304 P.2d 322, 325 (Okla. 1956); *C.P.A. Co. v. Jones*, 263 P.2d 731, 734 (Okla.1953).

**33.** *Dodson v. St. Paul Ins. Co.*, see note 22, supra.

**34.** *Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.*, see note 5, supra; 1 Corbin, Contracts, § 1 (1963). See also, *Regional Bank of Colorado v. St. Paul Fire & Marine Ins. Co.*, 35 F.3d 494–95 (10th Cir.1994).

**35.** *Shook v. State Farm Mut. Ins. Co. of Bloomington*, 872 F.Supp. 768, 772 (D.Mont.1994); G. White, "La Jolla Beach & Tennis Club v. Industrial Indemnity Co.: Redefining the Role of the Insured's Expectations in Shaping the Insurer's Duty to Defend," 30 Tort & Ins. L.J. 859, 869 (1994). See, *Eli Lilly & Co. v. Home Ins. Co.*, note 5, supra; *Keene v. Insurance Co. of N. America*, note 5, supra; *Crawford v. Ranger Ins. Co.*, note 5, supra; *Macon Light House Revival Center, Inc. v. Continental Ins. Co.*, note 5, supra; *Gleason v. Merchants Mut. Ins. Co.*, note 5, supra; *Dronge v. Monarch Ins. Co.*, note 5, supra; *Fritz v. Old American Ins. Co.*, note 5, supra; *Peerless Ins. Co. v. Brennon*, note 5, supra; *Grinnell Mut. Reinsurance Co. v. Voeltz*, note 5 supra; *Woodson*

*v. Manhattan Life Ins. Co.*, note 5, supra; *National Mut. Ins. Co. v. McMahon & Sons, Inc.*, note 5, supra; *Steigler v. Insurance Co. of N. America*, note 5, supra; *Davis v. M.L.G. Corp.*, note 5, supra; *Meier v. New Jersey Life Ins. Co.*, note 5, supra; *Kracl v. Aetna Casualty & Sur. Co.*, note 5, supra; *Bond Bros., Inc. v. Robinson*, 393 Mass. 546, 471 N.E.2d 1332–33 (1984); *National Union Fire Ins. Co. v. Reno's Executive Air, Inc.*, note 5, supra; *Mills v. Agrichemical Aviation, Inc.*, note 5, supra; *Crowell v. Federal Life & Casualty Co.*, note 5, supra; *Gyler v. Mission Ins. Co.*, note 5, supra; *Pribble v. Aetna Life Ins. Co.*, note 5, supra; *Katz Drug Co. v. Commercial Standard Ins. Co.*, note 5, supra; *Atlantic Cement Co. v. Fidelity & Casualty Co.*, note 5, supra.

**36.** *State Farm Mut. Auto. Ins. Co. v. Falness*, 39 F.3d 966–67 (9th Cir.1994); *Johnson v. Farm Bureau Mut. Ins. Co.*, 533 N.W.2d 203, 206 (Iowa 1995); *Hubred v. Control Data Corp.*, 442 N.W.2d 308, 311 (Minn.1989); *Atwood v. Hartford Accident & Indem. Co.*, 116 N.H. 636, 365 A.2d 744, 746 (1976); *Independent School Dist No. 197 v. Accident & Casualty Ins. of Winterthur*, 525 N.W.2d 600, 609 (Minn.App.1995); *Lehrhoff v. Aetna Casualty & Surety Co.*, 271 N.J.Super. 340, 638 A.2d 889, 892 (N.J.Sup.Ct.App.1994); *State Farm Mut. Auto. Ins. Co. v. Dimmer*, 160 Ariz. 453, 773 P.2d 1012, 1019 (Ct.App.1989), *review denied* (6/13/89).

conforms the policies with the parties' "reasonable expectations."[37]

A policy term is ambiguous under the reasonable expectations doctrine if it is reasonably susceptible to more than one meaning. When defining a term found in an insurance contract, the language is given the meaning understood by a person of ordinary intelligence.[38] The doctrine does not mandate either a pro-insurer or pro-insured result because only **reasonable** expectations of coverage are warranted.[39]

In Oklahoma, unambiguous insurance contracts are construed, as are other contracts, according to their terms.[40] The interpretation of an insurance contract and whether it is ambiguous is determined by the court as a matter of law.[41] Insurance contracts are ambiguous only if they are susceptible to two constructions.[42] In interpreting an insurance contract, this Court will not make a better contract by altering a term for a party's benefit.[43] We do not indulge in forced or constrained interpretations to create and then to construe ambiguities in insurance contracts.[44]

However, in *Conner v. Transamerica Ins. Co.*, 496 P.2d 770, 773 (Okla.1972), this Court found coverage for the defense of an action based on groundless, false or fraudulent conduct by the insured. The *Conner* policy provided coverage for "any suit ... even if any of the allegations of the suit are groundless, false or fraudulent." A subsequent provision of the same policy eliminated coverage for "any dishonest, fraudulent, criminal or malicious act of omission of any insured, partner or employee." This Court refused to allow a later provision of the policy to eviscerate coverage clearly delineated in a prior provision—the hidden exclusion was not given effect.[45]

The stacking cases—*Scott v. Cimarron Ins. Co., Inc.*, 774 P.2d 456, 458 (Okla.1989), *Withrow v. Pickard*, 905 P.2d 800, 804–06 (Okla.1995), and *Kramer v. Allstate Ins.*, No. 83,822 (Okla.Ct.App.1995) all provide that an insured will benefit from the coverage paid for regardless of whether a policy allows stacking of uninsured motorist coverage. *Conner*, disallowing a hidden exclusion and these cases relating the payment of premiums to the coverage which may be expected despite policy language demonstrate that crafty drafting of coverage language will not defeat the reasonable expectations of policy holders in Oklahoma.[46]

**37.** *Shook v. State Farm Mutual Ins. Co. of Bloomington*, see note 35, supra. See also, *Auto–Owners Ins. Co. v. Jensen*, 667 F.2d 714, 721 (8th Cir.1981); *Progressive Casualty Ins. Co. v. Marnel*, 587 F.Supp. 622, 624 (D.Conn.1983); *Wilson v. Insurance Co. of N. America*, 453 F.Supp. 732, 734 (N.D.Cal.1978).

**38.** *Regional Bank of Colorado v. St. Paul Fire & Marine Ins. Co.*, see note 34, supra; G. Dixon, D. Gische, M Hirsh, "The Nordstrom Decision & Settlement Allocation Under D & O Policies," 5 No. 3 CVRG 1, 26 (May/June 1995).

**39.** See, *Atwater Creamery v. Western Nat'l Mutual Ins.*, note 5 at 278, supra; *Hubred v. Control Data Corp.*, see note 36, supra; H. Wood, "The Insurance Fallout Following Hurricane Andrew: Whether Insurance Companies are Legally Obligated to Pay for Building Code Upgrades Despite the 'Ordinance or law' Exclusion Contained in Most Homeowners Policies," see note 2 at 957, supra.

**40.** *Starrett v. Oklahoma Farmers Union Mut. Ins. Co.*, 849 P.2d 397, 400 (Okla.1993); *Frank v. Allstate Ins. Co.*, 727 P.2d 577, 580 (Okla.1986); *Carraco Oil Co. v. Mid–Continent Casualty Co.*, see note 32, supra; *C.P.A. Co. v. Jones*, see note 32, supra.

**41.** *Dodson v. St. Paul Ins. Co.*, see note 22 at 376, supra; *Harjo Gravel Co. v. Luke–Dick Co.*, 194 Okla. 537, 153 P.2d 112, 114 (1944); *National Ins. Underwriters v. Walker*, 206 Okla. 629, 245 P.2d 737–38 (1952).

**42.** *Littlefield v. State Farm Fire & Casualty Co.*, see note 25, supra; *Dodson v. St. Paul Ins. Co.*, see note 22, supra.

**43.** *Wilson v. Travelers Ins. Co.*, see note 22, supra; *American Iron & Mach. Works Co. v. Insurance Co. of N. America*, see note 22, supra; *Illinois Bankers Life Assurance Co. v. Tennison*, 202 Okla. 347, 213 P.2d 848, 852 (1950).

**44.** *Dodson v. St. Paul Ins. Co.*, see note 22, supra; *Mid–Continent Life Ins. Co. v. Skye*, 113 Okla. 184, 240 P. 630, 632 (1925); *Sovereign Camp, W.O.W. v. Howell*, 176 Okla. 451, 56 P.2d 138–39 (1936).

**45.** See discussion, p. 866 supra.

**46.** See discussion and accompanying footnotes, pp. 866–867 supra.

The reasonable expectations doctrine comports with our case law and with the rules of construction applied to insurance contracts. Oklahoma law mandates that we join the majority of jurisdictions which have considered application of the doctrine [47] and apply it to cases in which policy language is ambiguous and to situations where, although clear, the policy contains exclusions masked by technical or obscure language or hidden exclusions.

## CONCLUSION

The reasonable expectations doctrine recognizes the true origin of standardized contract provisions, frees the courts from having to write a contract for the parties, and removes the temptation to create ambiguity or invent intent to reach a result.[48] The underlying principle of the reasonable expectations doctrine—that reasonable expectations of insurance coverage should be honored—[49] has been recognized by the majority of jurisdictions which have considered the issue [50] and by a steady progression of Oklahoma law beginning in 1952 with *Homestead Fire Ins. Co. v. De Witt*, 206 Okla. 570, 245 P.2d 92, 94 (1952) and continuing through 1995 in *Withrow v. Pickard*, 905 P.2d 800, 804–06 (Okla. 1995), in *Gay v. Hartford Underwriters Ins. Co.*, 904 P.2d 83 (Okla.1995) (*Gay II*), and in *Kramer v. Allstate Ins.*, No. 83,822 (Okla.Ct. App.1995). By adopting the reasonable expectations doctrine, we recognize that it is important that ambiguous clauses or carefully drafted exclusions should not be permitted to serve as traps for policy holders. Nevertheless, it is equally imperative that the provisions of insurance policies which are clearly and definitely set forth in appropriate language, and upon which the calculations of the company are based, should be maintained unimpaired by loose and ill-considered judicial interpretation.[51] Today, we hold that the doctrine of reasonable expectations may be applicable to the interpretation of insurance contracts in Oklahoma, and that the doctrine may apply to ambiguous contract language or to exclusions which are masked by technical or obscure language or which are hidden in a policy's provisions.

## QUESTIONS ANSWERED

We find that under Oklahoma law, the reasonable expectations doctrine may be applied in the construction of insurance contracts and that the doctrine may apply to ambiguous contract language or to exclusions which are masked by technical or obscure language or which are hidden in a policy's provisions.

ALMA WILSON, C.J., KAUGER, V.C.J., and LAVENDER, SIMMS, HARGRAVE, SUMMERS and WATT, JJ., concur.

OPALA, J., concurs in part and dissents in part.

HODGES, J., dissents.

---

**47.** See note 5 and accompanying discussion, pp. 863–866, supra.

**48.** *Darner Motor Sales v. Universal Underwriters*, see note 5 at 403, 682 P.2d at 398, supra.

**49.** See, *Atwater Creamery v. Western Nat'l Mutual Ins.*, note 5 at 278, supra; *Hubred v. Control Data Corp.*, see note 36, supra; H. Wood, "The Insurance Fallout Following Hurricane Andrew: Whether Insurance Companies are Legally Obligated to Pay for Building Code Upgrades Despite the 'Ordinance or law' Exclusion Contained in Most Homeowners Policies," see note 2, supra.

**50.** See note 5, supra.

**51.** *Williams v. Union Central Life Ins. Co.*, 291 U.S. 170, 179, 54 S.Ct. 348, 352, 78 L.Ed. 711, 92 A.L.R. 693 (1934); *Hemel v. State Farm Mutual Auto. Ins. Co.*, 211 La. 95, 29 So.2d 483, 486 (1947). See also, *Dodson v. St. Paul Ins. Co.*, note 22, supra; *Mid–Continent Life Ins. Co. v. Skye*, note 44, supra; *Sovereign Camp, W.O.W. v. Howell*, note 44, supra.