**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**June 15, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

PAMELA DALPAOS-LAWRENCE,

Plaintiff-Appellee,

v.

GUIDEONE AMERICA INSURANCE
COMPANY, an Iowa corporation,

Defendant-Appellant.

No. 06-7073
(D.C. No. CIV-04-500-FHS)
(E.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and
**McCONNELL**, Circuit Judge.

Defendant-appellant GuideOne America Insurance Co. (GuideOne), an

Iowa corporation, appeals from the district court's grant of summary judgment to

plaintiff-appellee Pamela Dalpaos-Lawrence, a citizen of Oklahoma.

Ms. Dalpaos-Lawrence claimed that GuideOne breached its insurance policy by

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

refusing her coverage following a motorcycle accident. On appeal, GuideOne argues that the district court erred in determining that Ms. Dalpaos-Lawrence was entitled to loss of income benefits under the policy and attorneys' fees. We affirm.

## I.

"We review *de novo* the district court's grant of summary judgment, viewing the record in the light most favorable to the party opposing summary judgment. Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *S. Hospitality, Inc. v. Zurich Am. Ins. Co.*, 393 F.3d 1137, 1139 (10th Cir. 2004). (citation omitted); Fed. R. Civ. P. 56(c). "Because this is a diversity case, we rely on the substantive law of Oklahoma and apply federal procedural law." *Ahrens v. Ford Motor Co.*, 340 F.3d 1142, 1145 (10th Cir. 2003).

## II.

The relevant facts are essentially uncontested. Ms. Dalpaos-Lawrence married Bobby Dalpaos on November 19, 1997. In 2000, an automobile insurance policy that was issued to Mr. Dalpaos by Progressive Specialty Insurance Co. through its insurance agent was "rolled over" into a similar insurance policy provided by GuideOne. Renewal policies were evidently then issued every six months thereafter. Mr. Dalpaos and Ms. Dalpaos-Lawrence lived together at 216 Creek Avenue in Hartshorne, Oklahoma, from 1996 until December 2001

when they briefly separated. They reconciled in January 2002 before permanently separating in February 2002.

In June of 2002 a renewal automobile insurance policy with Mr. Dalpaos as the named insured was issued by GuideOne. The policy was effective from June 17, 2002, until December 17, 2002. Aplt. App., Vol. II at 428. On November 10, 2002, Ms. Dalpaos-Lawrence was involved in a motorcycle accident in Oklahoma. She sustained numerous injuries including a broken leg, was unable to work for approximately two years, and was unable to successfully complete her job assignments when she returned to work in 2005. GuideOne denied coverage under the policy and Ms. Dalpaos sued.

The issue before the district court was whether Ms. Dalpaos-Lawrence was covered by the "loss of income benefits coverage" added to the policy by an "additional benefits endorsement." *Id*., Vol. I at 135. The additional benefits endorsement not only added loss of income benefits coverage to Part B of the policy, it also provided in pertinent part that:

"Insured" as used in this Part [B] means:

1.    You or any "family member";

      a.    While "occupying"; or

      b.    As a pedestrian when struck by:

a motor vehicle designed for use mainly on public roads . . . .

*Id.*, Vol. I at 135. The term "family member" is defined in the policy as, in pertinent part: "a person related to you by blood, marriage or adoption who is a resident of 'your' household." *Id.*, Vol. I at 117. As used in the policy, the terms "you" and "your" refer to "[t]he 'named insured' shown in the Declarations" and "[t]he spouse if a resident of the same household." *Id.* Even if the spouse is not a resident of the same household as the named insured, coverage may be provided. The policy also states:

> If the spouse ceases to be a resident of the same household during the policy period or prior to the inception of this policy, the spouse will be considered "you" and "your" under this policy but only until the earlier of:
>
> 1.     The end of 90 days following the spouse's change of residency;
>
> 2.     The effective date of another policy listing the spouse as a named insured; or
>
> 3.     the end of the policy period.

*Id.* The district court held that Ms. Dalpaos-Lawrence was an "insured" for the purposes of loss of income benefits coverage. It held that although Ms. Dalpaos-Lawrence was not a "family member" because she was not a resident of Mr. Dalpaos's household, she did qualify as a "you" or "your" under the policy and was therefore covered.

The district court also had to decide whether two exclusions in Part B of the policy applied to the loss of income benefits coverage. Part B's "exclusions" section states, in pertinent part:

> We do not provide Medical Payments Coverage for any "insured" for "bodily injury":
>
> 1.   Sustained while "occupying" any motorized vehicle having fewer than four wheels.
>
>    . . . .
>
> 5.   Sustained while "occupying," or when struck by, any vehicle (other than "your covered auto") which is:
>
>    a.   Owned by you; or
>
>    b.   Furnished or available for your regular use.[1]

*Id.*, Vol. I at 121-22. The district court held that although the additional benefits endorsement amended Part B of the policy, it made no change to the exclusions section including the particular exclusions at issue. The exclusions, therefore, continued to explicitly apply only to "Medical Payments Coverage." The district court awarded summary judgment and attorneys' fees to Ms. Dalpaos-Lawrence and GuideOne filed its appeal.[2]

_____

[1]   The motorcycle on which Ms. Dalpaos-Lawrence was riding at the time of the accident was not owned by her but was available for her regular use so it was clear that if either exclusion applied, coverage would be denied.

[2]   The parties stipulated to the dismissal of Ms. Dalpaos-Lawrence's bad faith claim with prejudice.

III.

GuideOne's first argument is that the district court erred in determining that Ms. Dalpaos-Lawrence was a "you" under the policy and, therefore, was an "insured" for purposes of loss of income benefits coverage. It argues that because Ms. Dalpaos-Lawrence ceased to be a resident of the same household as Mr. Dalpaos during the policy period that ended June 16, 2002, her coverage would have ended either (1) sometime in May 2002 (at the end of 90 days following the date in February 2002 that Mr. Dalpaos moved out of the home at 216 Creek Avenue in Hartshorne, Oklahoma) or (2) on June 16, 2002 (the end of the policy period).

A.

GuideOne first argues that Ms. Dalpaos-Lawrence ceased to be an insured sometime in May 2002, at the end of 90 days following the date in February 2002 that Mr. Dalpaos moved out of the home at 216 Creek Avenue in Hartshorne, Oklahoma. The policy states:

> If the spouse ceases to be a resident of the same household during the policy period or prior to the inception of this policy, the spouse will be considered "you" and "your" under this policy but only until the earlier of:
>
> 1.    The end of 90 days following the spouse's change of residency.
>
> 2.    The effective date of another policy listing the spouse as a named insured; or

3.    the end of the policy period.

Aplt. App., Vol. I at 117.  The district court first determined that this provision

was not ambiguous.  It then held that the first of these three cutoffs did not apply

to Ms. Dalpaos-Lawrence because she (as the "spouse") had not "changed" her

residence when her husband moved out.

GuideOne agrees that the provision is not ambiguous, but argues that the

court misinterpreted the plain language of the provision.  It argues that the district

court placed too much emphasis on the physical structure at 216 Creek Avenue

where the couple lived.  GuideOne argues that the parties agree that Ms. Dalpaos-

Lawrence "cease[d] to be a resident" of her husband's "household" in February of

2002, and that if she was no longer a resident of her husband's household she

must be considered a resident of *some* other "household."  GuideOne reasons that

Ms. Dalpaos-Lawrence therefore experienced a "change in residency" no matter

who initiated that change.  We agree that this is one reasonable interpretation of

this policy provision.

But we believe that the district court's interpretation is also reasonable and

that the language of the policy provision is therefore ambiguous.  Whether

language in an insurance policy is ambiguous is a question of law.  *Wynn v.

Avemco Ins. Co.*, 963 P.2d 572, 575 (Okla. 1998).  This court has held that under

Oklahoma law "[t]he test to be applied in determining whether a word or phrase is

ambiguous is whether the word or phrase is susceptible to two interpretations on

-7-

its face. The test is applied from the standpoint of a reasonably prudent lay person, not from that of a lawyer." *Haberman v. Hartford Ins. Group*, 443 F.3d 1257, 1265 (10th Cir. 2006) (citation and internal quotation marks omitted). Although Mr. Dalpaos and Ms. Dalpaos-Lawrence were no longer members of the same household after he moved out, this does not necessarily mean Ms. Dalpaos-Lawrence had a "change of residency" at that time. One is generally a "resident" of a physical place such as a house, a city, or a state. The district court's determination that Ms. Dalpaos-Lawrence's "residency" did not change because she continued to live at 216 Creek Avenue was also a reasonable interpretation of the policy provision. Since the policy provision is susceptible to two interpretations on its face, it is ambiguous.

Oklahoma law recognizes that "insurance contracts are contracts of adhesion because of the uneven bargaining position of the parties." *Spears v. Shelter Mut. Ins. Co.*, 73 P.3d 865, 868 (Okla. 2003) (internal quotation marks omitted). Further, for "many years" Oklahoma courts have applied the rule that "in the event of ambiguity or conflict in the policy provisions, a policy of insurance is to be construed strictly against the insurer and in favor of the insured." *Id.* As noted by both parties in this case, Oklahoma adopted the "doctrine of reasonable expectations" in *Max True Plastering Co. v. United States Fidelity & Guaranty Co.*, 912 P.2d 861, 864 (Okla. 1996). In that case the Oklahoma Supreme Court stated that "[t]he standard under the doctrine is a

'reasonable expectation'; and courts must examine the policy language objectively to determine whether an insured could reasonably have expected coverage." 912 P.2d at 865 (footnote call number omitted).

Thus, the Oklahoma Supreme Court held in *Spears* that "[u]nder the reasonable expectations doctrine, when construing an ambiguity or uncertainty in an insurance policy, the meaning of the language is not what the drafter intended it to mean, but what a reasonable person in the position of the insured would have understood it to mean." *Spears*, 73 P.3d at 868. It further held that it was:

> clear [from] *Max True Plastering Co.* . . . that if an insurer desires to limit its liability under a policy, it must employ language that clearly and distinctly reveals its stated purpose. After *Max True Plastering Co.*, . . . unclear or obscure clauses in an insurance policy will not be permitted to defeat coverage which is objectively reasonably expected by a person in the position of the insured.

*Id.*

Examining the ambiguous language of the policy's definition of "you" and "your" objectively, we hold that an insured could reasonably have expected that the phrase "[t]he end of 90 days following the spouse's change of residency," would only apply if the spouse and not the named insured moved. As recognized by the district court, if GuideOne had wanted to have made the language more clear "it most certainly could have done so by simply phrasing the time frame as 90 days from 'the spouse's or named insured's change of residency.'" Aplt. App., Vol. III at 741 n.6.

B.

GuideOne's next contention is that even if Ms. Dalpaos-Lawrence did not cease being an insured in May of 2002, coverage nevertheless ceased on June 16, 2002, because "[i]t was undisputed . . . that the insurance policy (in effect at the time [Ms. Dalpaos-Lawrence] ceased to be a resident of the same household as [Mr.] Dalpaos) had a policy period ending on June 16, 2002." Aplt. Opening Br. at 26. The district court rejected this argument, holding that "[t]he insurance policy was in effect from June 17, 2002, to December 17, 2002. Consequently, the 'end of the policy period' as stated under the third time frame becomes December 17, 2002." Aplt. App., Vol. III at 741. The court further held that "[b]ecause Defendant has chosen to reissue its policy at six-month intervals, new policy periods are initiated and previous policy periods expire." *Id*. at 741 n.7.

GuideOne argues, citing Connecticut and Missouri state cases and a case from this court applying Colorado law, that "[i]t is black-letter law that the renewal of an insurance policy constitutes a separate contract to be governed by general contract principals."[3] Oklahoma courts have also held that "the renewal of an insurance policy is a new contract." *Wynn v. Avemco Ins. Co.*, 963 P.2d

---

[3]    We recognize, however, that in *Government Employees Insurance Co. v. United States*, the case cited by GuideOne, this court acknowledged that "[w]hen a renewal policy is issued, it is presumed, unless a contrary intention appears, that the parties intended to adopt in the renewal policy, the terms, conditions and coverage of the expiring policies." 400 F.2d 172, 175 (10th Cir. 1968) (internal quotation marks omitted).

572, 574 (Okla. 1998); *see also Bowling v. Aetna Life Ins. Co.*, 55 P.2d 1023, 1025-26 (Okla. 1936) (citing with approval cases from other states holding that accident policies are contracts for specific periods of time and that if they are renewed, the renewal constituted a separate and independent contract). Oklahoma courts have also spoken of renewal policies as being separate from original policies. *See Wynn*, 963 P.2d at 574 ("[I]t is presumed, unless a contrary intention appears, that the parties intended that the renewal policy cover the same terms, conditions, and exceptions as the original policy.") (internal quotation marks omitted); *Kirkpatrick v. Allstate Ins. Co.*, 859 P.2d 532 (Okla. Civ. App. 1993) ("When a renewal policy is delivered by the insurance company to the insured upon expiration of a policy, without a request by the insured, it is merely an offer or proposal which must be accepted by the insured before a contract of insurance is effected.").

Consequently, we agree with the district court that the insurance policy at issue was the renewal policy running from June 17, 2002, to December 17, 2002. Since Ms. Dalpaos-Lawrence ceased to be a resident of Mr. Dalpaos's household prior to the inception of the renewal policy she was considered a "you" or "your" under the policy until the earliest of the three possible cutoffs.[4] In the case of the

---

[4] We do not address whether our construction of the policy terms might lead to an absurd result. GuideOne has not properly presented such an argument to this court. *See Anderson v. U.S. Dep't of Labor*, 422 F.3d 1155, 1174 (10th Cir. 2005) ("The failure to raise an issue in an opening brief waives that issue.").

-11-

third cutoff, the "end of the policy period" would be December 17, 2002. The district court's judgment with respect to this point is affirmed.

IV.

GuideOne's final argument is that the exclusions found in Part B of the policy applied to loss of income benefits coverage. GuideOne argues that because the additional benefits endorsement changed the title of Part B from "Medical Payments Coverage" to "Medical-Income Protection," "all exclusions in that part were applicable to claims for income protection coverage." Aplt. Opening Br. at 32. We affirm this point for the reasons set forth by the district court in its order granting summary judgment. The endorsement made no change to the exclusions section of Part B, leaving the exclusions applicable only to the "Medical Payments Coverage" and not the added loss of income benefits coverage.

V.

As we have affirmed the district court's rulings regarding GuideOne's previous claims, we need not address its argument regarding the attorneys' fee award. The judgment of the district court is AFFIRMED.

Entered for the Court

Wade Brorby
Senior Circuit Judge

-12-